No. 97-471

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 212

STATE OF MONTANA,

Plaintiff and Respondent,

v.

GREG THOMAS PRICE,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

Honorable Kenneth R. Neill, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Robert G. McCarthy, Attorney at Law, Butte, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Micheal Wellenstein,

Assistant Attorney General, Helena, Montana

Lisa Swan Semansky, Luinstra and Semansky, Great Falls, Montana

Submitted on Briefs: July 19, 2001
Decided: October 25, 2001

Filed:

_____

Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 On April 3, 1997, Greg Price was convicted of driving under the influence of alcohol and/or drugs and resisting arrest in the District Court for the Eighth Judicial District in Cascade County. Prior to trial, Price filed a motion to dismiss for lack of speedy trial. The District Court denied the motion to dismiss, from which Price appeals. We affirm the judgment of the District Court.

¶2 The sole issue on appeal is: Did the District Court err by denying Price's motion to dismiss for failure to provide him with a speedy trial?

## FACTUAL BACKGROUND

¶3 On July 29, 1994, Greg Price was convicted in Great Falls City Court of driving under the influence of alcohol and/or drugs in violation of § 61-8-401(1)(a), MCA (1993), and resisting arrest in violation of § 45-7-301(1), MCA (1993). He filed a notice of appeal in the Eighth Judicial District Court of Cascade County on August 12, 1994. The District Court ruled the notice of appeal was untimely and dismissed his appeal.

¶4 Price then appealed to this Court. We reversed, holding that Price's appeal to the District Court was timely filed and remanded the cause to the District Court for trial. *State v. Price* (1995), 271 Mont. 409, 897 P.2d 1084. Remittitur was filed in the District Court on July 13, 1995, and on September 18, 1995, the State filed a motion for the District Court to set a non-jury trial in the case. The District Court set a non-jury trial for December 20, 1995.

¶5 On December 5, 1995, Price filed a *pro se* motion requesting a jury trial; the motion was accompanied by a letter stating his attorney had withdrawn. The following day, Price's attorney filed a motion withdrawing as counsel of record with the consent of Price. On December 8, 1995, the District Court vacated the bench trial set for December 20, 1995, but scheduled a hearing on Price's motion requesting a jury trial for that date. Price

filed his brief in support of his motion, and the State filed a consent to Price's request for a jury trial. On December 22, 1995, the District Court issued an order granting Price's motion for a jury trial and set a jury trial for March 5, 1996.

¶6 The State and Price then stipulated to a request that the District Court vacate the March trial date, because the State had a calendaring conflict with the March 5, 1996, trial date. The District Court vacated the trial date and rescheduled the trial for April 30, 1996. On April 9, 1996, the District Court vacated that trial date and reset the trial for September 24, 1996, due to a conflict in the District Court's calendar.

¶7 On September 9, 1996, Price filed a motion for an order compelling the deposition of one of the State's witnesses and requesting postponement of the September trial date. The District Court granted Price's motion to vacate the trial date and reset the trial for February 19, 1997. On February 18, 1997, the District Court filed an order vacating the trial date, due to another conflict in the District Court's calendar. The District Court reset the trial for April 1, 1997.

¶8 On March 26, 1997, Price filed a motion to dismiss for lack of a speedy trial and supporting brief, and the State thereafter filed a responsive brief. On April 1, 1997, prior to trial, the District Court conducted a hearing on the motion and received oral argument, wherein the parties referenced facts and law in support of their positions. The District Court denied Price's motion and proceeded to trial. After a three-day trial, a jury found Price guilty of driving under the influence of alcohol and/or drugs but could not reach a verdict on the charge of resisting arrest. The State later moved to dismiss the charge of resisting arrest. Price now appeals the denial of his motion to dismiss for lack of a speedy trial.

¶9 Did the District Court err by denying Price's motion to dismiss for failure to provide him with a speedy trial?

## DISCUSSION

¶10 Whether a defendant has been denied a speedy trial constitutes a question of constitutional law. *City of Billings v. Bruce*, 1998 MT 186, ¶ 18, 290 Mont. 148, ¶ 18, 965 P.2d 866, ¶ 18; *see also State v. Small* (1996), 279 Mont. 113, 116, 926 P.2d 1376, 1378. We review a district court's conclusions of law to determine whether its interpretation of the law is correct. *Bruce,* ¶ 18; *see also State v. Kipp*, 1999 MT 197, ¶ 7, 295 Mont. 399, ¶

7, 984 P.2d 733, ¶ 7; *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

¶11 The Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution guarantee a criminal defendant's right to a speedy trial. The United States Supreme Court established four factors to be considered when analyzing a claim that speedy trial was denied in *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. The four factors established in *Barker* and adopted by this Court in *Bruce* are: (1) the length of delay; (2) the reason for the delay; (3) the defendant's timely assertion of his right to a speedy trial; and (4) the prejudice to the defense caused by the delay. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2192, 33 L.Ed.2d at 117; *see also Bruce,* ¶ 19. Prejudice to the defendant can be established based on any of the following factors: (1) pretrial incarceration; (2) anxiety and concern to the defendant; (3) impairment of the defense. *Bruce,* ¶ 19.

¶12 The District Court rendered its decision on Price's speedy trial motion approximately one year prior to this Court's decision in *Bruce.* However, both parties argue that the four factors in the *Barker/Bruce* test provide the proper basis for determination of Price's speedy trial claim.

## Length of Delay

¶13 The first consideration is the length of delay from the time charges are filed until the defendant's trial. Further speedy trial analysis is triggered if the length of delay is 200 days or longer. *Bruce,* ¶ 55. When the case involves a trial after an appeal from this Court, the length of delay is measured from the time remittitur is filed in the District Court until the trial date. *State v. Stewart* (1995), 266 Mont. 525, 530, 881 P.2d 629, 632. Here, remittitur was filed in the District Court on July 13, 1995, and Price's trial date was April 1, 1997. Although the District Court incorrectly concluded that the length of delay was 650 days, the correct length of 628 days renders further speedy trial analysis necessary.

## Reason for Delay

¶14 The second consideration is the reason for the delay. In considering the reasons for delay, the court must determine which party is responsible for specific periods of delay, allocating the total time of delay between the parties. *State v. Hardaway,* 1998 MT 224, ¶ 15, 290 Mont. 518, ¶ 15, 966 P.2d 125, ¶ 15. If 275 days or more of delay are

attributable to the State, the State has the initial burden to demonstrate that the defendant has not been prejudiced by the delay. *Bruce,* ¶ 56. If the State satisfies its burden by showing the defendant has not been prejudiced by the delay, the burden shifts to the defendant to show prejudice has occurred. *Bruce,* ¶ 56; *Hardaway*, ¶ 23. "[T]he [State] bears the burden of prosecution, and a defendant is under no obligation to ensure diligent prosecution of the case against him or to help the [State] avoid dismissal for failure to timely prosecute him." *Kipp,* ¶ 10 (quoting *Bruce,* ¶ 63). Delay caused directly by the prosecution and delay that is institutional in nature are attributable to the State. *Bruce*, ¶ 61. Although institutional delay is charged to the State, it weighs less heavily against the State than do other kinds of delay. *State v. Highpine,* 2000 MT 368, ¶ 16, 303 Mont. 422, ¶16, 15 P.3d 938, ¶16.

¶15 The first 67 days of delay are attributable to the State. Remittitur was filed in the District Court on July 13, 1995, and the State failed to request that the matter be set for trial until September 18, 1995.

¶16 On September 19, 1995, the District Court scheduled Price's non-jury trial for December 20, 1995. The 93 days of delay between the District Court's Order and the trial date are institutional delay and, accordingly, are attributed to the State.

¶17 Fifteen days before the trial, on December 5, 1995, Price filed a motion requesting a jury trial. The District Court granted Price's motion for a jury trial and set the case for trial on March 5, 1996. The 76 days of delay resulting from Price's motion requesting a jury trial were attributed to Price by the District Court, which Price argues was error. Price claims his motion did not request a continuance, nor request the District Court to vacate the December 20, 1995, trial date. Thus, Price argues that the delay is institutional in nature and should be charged to the State as such.

¶18 However, in addition to requesting a jury trial, Price also requested that the District Court set the "trial on a date which would give the Defendant sufficient time to properly prepare for the trial." This indicates that at the time he filed the motion, Price was not ready for trial and needed a continuance. Furthermore, given the nature of Price's motion, the District Court found it necessary to hold a hearing on the request for a jury trial and ordered the parties to submit briefs on the issue. Although the State eventually consented to Price's jury demand, there was insufficient time to resolve the issue and summon a jury panel before the December 20, 1995, trial date. When a defendant raises an issue before trial which makes the original trial date impracticable, the reasonable period of delay

caused thereby is attributable to the defendant. *Kipp,* ¶ 12. Given these facts and Price's need for a continuance, the 76 days of delay were properly attributed to Price.

¶19 On February 26, 1996, the parties stipulated to vacating the March 5, 1996, trial date due to a conflict in the prosecutor's schedule. The District Court vacated the March 5, 1996, trial and reset the trial for April 30, 1996. Due to a conflict in the District Court's calendar, on April 9, 1996, the District Court rescheduled the trial date to September 24, 1996. The 35 days of delay between the March 5, 1996, trial date to the District Court's Order on April 9, 1996, are correctly attributed to the State. The 168 days of delay from the District Court's April 9, 1996, Order to the September 24, 1996, trial date are institutional delay attributable to the State, which neither party disputes. Although the District Court incorrectly calculated this delay as 162 days, it correctly attributed the delay to the State as institutional delay.

¶20 On September 9, 1996, Price filed a Motion compelling the deposition of one of the State's witnesses and requesting the District Court vacate the September 24, 1996, trial date, an indication Price was not prepared for trial at this time. Price also requested that the District Court reset the trial date at the convenience of the court. The District Court reset the trial for February 19, 1997, which resulted in a delay of 148 days. The District Court properly attributed this delay of 148 days to Price, a finding which Price does not dispute.

¶21 On February 18, 1997, the District Court vacated the February 19, 1997, trial date due to a conflict in the District Court's calendar. The trial was reset for April 1, 1997, resulting in 41 days of delay. The District Court correctly determined this delay was attributable to the State as institutional delay.

¶22 Based on these determinations, 224 days of delay are attributable to Price and the State is responsible for 404 days of delay. Of the 404 days of delay attributable to the State, 302 days of the delay were institutional in nature. Institutional delays weigh less heavily against the State in the *Barker* balancing process than intentional delays resulting from oppressive tactics. *State v. Haser,* 2001 MT 6, ¶ 26, 304 Mont. 63, ¶ 26, 20 P.3d 100, ¶ 26. The burden thus shifted to the State to prove that Price was not prejudiced by the delay, because more than 275 days of delay are attributable to the State. *Bruce,* ¶ 56.

Assertion of Right

¶23 The third consideration is whether the defendant asserted his right to a speedy trial in a timely manner. So long as a defendant invokes his right to a speedy trial either by demanding a speedy trial, or by filing a motion to dismiss for lack of speedy trial prior to the commencement of the trial, we conclude the assertion of the right is timely. *Bruce,* ¶ 57. In this case, Price filed his motion to dismiss based upon a violation of his right to a speedy trial on March 26, 1997. Thus, Price asserted his right to a speedy trial in a timely fashion.

## Prejudice

¶24 The final consideration is whether the defense has been prejudiced by the delay. We evaluate prejudice based on the three interests that speedy trials are supposed to protect: (1) prevention of oppressive pretrial incarceration; (2) minimization of the defendant's anxiety and concern; (3) avoidance of impairment of the defense. *Bruce,* ¶ 68. The State has the burden of showing Price's defense was not prejudiced by the delay. *Bruce,* ¶ 66.

¶25 The first interest to consider is oppressive pretrial incarceration. The State demonstrated that Price was not incarcerated prior to his District Court trial, so oppressive pretrial incarceration is not a consideration in this case.

¶26 The second interest to consider is the amount of anxiety and concern caused by the pretrial delay. A certain amount of anxiety and concern are an inherent part of being charged with a crime. *Bruce,* ¶ 70. This Court has also recognized that the State may not be able to present direct proof of the defendant's state of mind. *Bruce,* ¶ 56. We have held that the "burden to show a lack of anxiety becomes considerably lighter in the absence of more than marginal evidence of anxiety." *Bruce,* ¶ 70 (citing *State v. Williams-Rusch* (1996), 279 Mont. 437, 452, 928 P.2d 169, 178).

¶27 The District Court determined that Price did not suffer any anxiety or concern beyond the normal amount suffered by being charged with a crime. The State offered that Price's original city court sentence was stayed pending his *de novo* appeal to the District Court. This prevented the DUI conviction from appearing on his driving record and adversely affecting his driving privileges or ability to obtain insurance during the course of the proceeding. Price's pre-charge driving record and status were thus maintained, and therefore, his life's affairs were protected from the impact of the pending charge and city court conviction. Conversely, Price offered no information to show he suffered more than the normal amount of anxiety and concern inherent in being charged with a crime.

Therefore, the District Court correctly determined that the State has met its burden, and the Defendant did not suffer more than the normal anxiety associated with the charge.

¶28 The third interest to be considered is prejudice to the defense. This is arguably the most important of the three factors, because "the inability of the defendant adequately to prepare his case skews the fairness of the entire system." *Bruce,* ¶ 19 (quoting *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118). In reviewing the impairment of defense factor, this Court stated that it

> look[s] at whether the delay directly affected the defendant's ability to call witnesses on his own behalf-those who can be located and accurately recall events-and whether the delay directly diminished and impeded the defendant's own ability to present any other evidence, or develop a particular theory or line of defense.

*Haser, ¶ 35.*

¶29 The State argues the Defendant was not prejudiced by the delay. In opposition to the motion in the District Court, the State offered that it had re-interviewed its witnesses several times over the course of the proceeding, having done so in preparation for new trial settings as they were established by the Court, and consequently, witness memories were not diminished.

¶30 Further, the State asserts that the record reflects that the witnesses called by Price exhibited no signs of a diminished memory regarding their testimony. Price called only two witnesses. The first witness was a medical records custodian who testified only to introduce medical records into evidence. Because her testimony establishing a foundation for the introduction of documents was not affected by the delay of the trial, diminished memory was not an issue.

¶31 The second witness called by Price was a police officer, who, as previously mentioned, had been re-interviewed several times during the course of the proceeding. Further, as the State illustrates, the record reflects that the police officer had no difficulty recalling the details of Price's arrest. Further, if the officer would have had such difficulty, he could have referred to his written report to refresh his memory.

¶32 The State also demonstrated that Price's own memory was not diminished due to the delay. Although Price claims his own memory may have been diminished due to the delay,

he never took the stand to testify. Furthermore, as a *pro se* defendant, Price conducted all witness examinations, his opening statement and his closing statement. As the State points out, the trial transcripts reflect that Price had a solid command of the facts and details of the case. In fact, while represented by defense counsel in city court, Price was convicted of both DUI and resisting arrest. Representing himself in the District Court, Price's defense efforts resulted in the jury being unable to reach a verdict on the resisting arrest charge. The State subsequently dismissed it.

¶33 In considering these factors, the District Court concluded that "there really are no facts that the defense has been impaired. The State presented sufficient evidence to rebut the presumption that the delay in trial impaired Price's ability to prepare his defense."

¶34 Furthermore, Price did not offer evidence to rebut the State's showing that he was not prejudiced. In the District Court, Price argued only that witness memories could fade, but offered no support for the assertion. The record does not indicate that Price himself had a diminished memory. Based on the foregoing, the District Court did not err in finding that Price's defense was not impaired by the delay.

¶35 We conclude the State has satisfied its burden of showing Price was not prejudiced by the delay. Price failed to rebut the State's showing by demonstrating he suffered an aggravated amount of anxiety or concern as a result of the delay or that his defense was impaired as a result of the delay.

¶36 "[T]he four factors established by Barker [sic] are necessarily general guidelines to be applied on a case-by-case basis to the unique circumstances of each case. 'In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.'" *Bruce*, ¶ 20 (quoting *Barker*, supra). Having considered and balanced the *Barker* factors, we cannot conclude that the District Court erred in denying Price's motion to dismiss for failure to provide him with a speedy trial. Its judgment is affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART