No. 05-251

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 312

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

LEON HARLSON,

        Defendant and Appellant.

APPEAL FROM:    The District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 03-709,
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Richard J. Carstensen, Attorney at Law, Billings, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; Pamela P. Collins,
Assistant Attorney General, Helena, Montana

        Dennis Paxinos, County Attorney; Christopher A. Morris, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  May 10, 2006

Decided:   December 5, 2006

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Leon Harlson appeals from his convictions in the Thirteenth Judicial District Court, Yellowstone County, of two counts of theft and one count of criminal endangerment.  Harlson alleges multiple errors both before and during trial.  We affirm.

¶2     Harlson raises the following issues on appeal:

¶3     1. Did the District Court abuse its discretion when it allowed the State to amend the information?

¶4     2. Did the District Court abuse its discretion in denying Harlson's motion to dismiss for failure of the affidavit to show probable cause?

¶5     3. Did the District Court abuse its discretion when it denied Harlson's motion to sever?

¶6     4. Did the District Court err in denying Harlson's motion to dismiss for lack of speedy trial?

¶7     5. Did the District Court abuse its discretion in prohibiting Harlson's proposed rebuttal witness concerning the value of the trucks at issue in Counts I and II?

¶8     6. Did the prosecutor improperly comment during closing argument on Harlson's failure to testify?

### BACKGROUND

¶9     On May 25, 2003, Perry Metcalf and Barbara Hensley were arrested at Hensley's Billings, Montana, residence and taken to jail.  Metcalf's truck was left parked outside Hensley's house.  Hensley's friend Georgia Frankfurth obtained the keys to Metcalf's truck for the purpose of moving the vehicle to a safer location.  However, since

2

Frankfurth did not have a driver's license, she asked her son, Leon Harlson, to move the truck. Harlson apparently kept the vehicle for several days. On June 1, 2003, Metcalf reported to the Billings Police Department (BPD) that his truck had been stolen. On June 5, 2003, Harlson drove Metcalf's truck to the Wild West Saloon. He pulled up behind Angela Brown as she was cleaning a spilled beverage out of her truck and borrowed a lighter from her. Brown then entered an adjacent business to pick up her step-father. Brown's step-father saw Harlson drive off in Brown's truck. Brown reported the theft to the BPD.

¶10 Lieutenant Timothy O'Connell of the BPD observed Harlson driving the truck at about fifty miles per hour in a residential area with a twenty-five mile-per-hour speed limit. He also observed Harlson fail to stop at a stop sign. Officer Tim Hawkins also responded to the report of the stolen truck. He followed the truck and could barely keep up with it while driving sixty miles per hour. Harlson left the truck at 727 Howard Street and ran into a residence. Several police officers arrived and searched the area. Harlson eventually came out of the residence.

¶11 Officer Hawkins could smell the odor of alcohol on Harlson and observed that Harlson's eyes were red and bloodshot. Officer Hawkins noted that Harlson acted lethargic and slurred his speech. He transported Harlson to the DUI processing center, where Harlson failed field sobriety tests. Harlson refused to perform a breath test.

¶12 The State charged Harlson by information with two counts of felony theft and one count of felony criminal endangerment. The first trial ended in a mistrial when his attorney discovered a conflict of interest. Before the second trial, the State filed an

3

amended information which added a misdemeanor count of driving under the influence (DUI).  A jury convicted Harlson of both theft counts and the criminal endangerment count, and found Harlson not guilty of DUI.  This appeal followed Harlson's sentencing. Further facts will be discussed as necessary.

## DISCUSSION

¶13    **ISSUE 1: Did the District Court abuse its discretion when it allowed the State to amend the information?**

¶14    We review a district court's decision to allow the State to amend a criminal complaint or information for abuse of discretion.  *State v. Allen*, 278 Mont. 326, 330, 925 P.2d 470, 472 (1996).

¶15    Section 46-11-205(1), MCA, provides:

> The court may allow an information to be amended in matters of substance at any time, but not less than 5 days before trial, provided that a motion is filed in a timely manner, states the nature of the proposed amendment, and is accompanied by an affidavit stating facts that show the existence of probable cause to support the charge as amended. A copy of the proposed amended information must be included with the motion to amend the information.

¶16    In analyzing issues arising under § 46-11-205, MCA, we require stricter adherence to the procedural rules when the amendment is one of substance rather than form.  *State v. Kern*, 2003 MT 77, ¶ 41, 315 Mont. 22, ¶ 41, 67 P.3d 272, ¶ 41.  In this case, the State filed an amended affidavit and motion for leave to file amended information (motion to amend) on March 22, 2004, listing DUI as an additional charge.  This amendment was one of substance, since it altered the nature of the offense and essential elements of the crime, and changed the proofs and defenses required by adding a DUI charge.  *See Kern*,

4

¶ 42 (citing *City of Red Lodge v. Kennedy*, 2002 MT 89, ¶ 14, 309 Mont. 330, ¶ 14, 46 P.3d 602, ¶ 14). In *Kern*, even though the State moved to amend the information orally rather than in writing, we determined that the defendant was made aware of each change and his substantial rights were not prejudiced. *Kern*, ¶ 43.

¶17 Harlson argues that the State, in filing the amended information against him, failed to follow the requirements of § 46-11-205, MCA. Harlson alleges that the State failed to timely file the motion to amend. The State, however, filed both the motion to amend and the amended information more than five days before trial as required by § 46-11-205(1), MCA. Although Harlson alleges that the motion to amend failed to provide a statement as to the nature of the proposed amendment, the motion clearly states that the additional charge was DUI. Harlson also alleges that the failure of the State to file a written notice denied him the time to object. This contention is belied by the record which shows that the State filed the written motion to amend on March 22, 2004, and Harlson objected to this filing by motion on March 30, 2004.

¶18 Harlson correctly stated that the State failed to include a copy of the proposed amended information with the motion to amend, as required by § 46-11-205(1), MCA. As noted, the State filed the motion to amend on March 22, 2004, and the amended information three days later. This timely filing cured any possible prejudice to Harlson's substantial rights. Even with the stricter adherence to the procedural rules necessary with an amendment of substance, the State's failure to include a copy of the proposed amended information with its motion does not amount to reversible error. *See Kern*, ¶ 43. This Court previously stated its unwillingness to "lay down a rule which would

5

permit the guilty to escape punishment on technical grounds and when all his substantial rights have been protected . . . ." *State v. Wehr*, 57 Mont. 469, 479, 188 P. 930, 932-33 (1920).

¶19 Harlson also argues that the State amended the information to add the DUI count in order to introduce evidence, excluded in the first trial, that Harlson was intoxicated. We need not consider this argument, however, since Harlson failed to raise or address it in his motions before the District Court. We will not address an issue raised for the first time on appeal or a party's change in legal theory. *State v. Wetzel*, 2005 MT 154, ¶ 13, 327 Mont. 413, ¶ 13, 114 P.3d 269, ¶ 13.

¶20 **ISSUE 2: Did the District Court abuse its discretion in denying Harlson's motion to dismiss for failure of the affidavit to show probable cause?**

¶21 We review a district court's determination that a motion to file an information is supported by probable cause for abuse of discretion. *State v. Dunfee*, 2005 MT 147, ¶ 31, 327 Mont. 335, ¶ 31, 114 P.3d 217, ¶ 31.

¶22 Harlson contends that the District Court abused its discretion in failing to dismiss the four charges against him in the amended information. He argues that the State failed to include sufficient evidence in the amended affidavit to support a finding of probable cause as required under § 46-11-201, MCA.

¶23 Section 46-11-201, MCA, provides:

> (1) The prosecutor may apply directly to the district court for permission to file an information against a named defendant.
>     . . . .
> (2) An application must be by affidavit supported by evidence that the judge or chief justice may require. If it appears that there is probable

6

cause to believe that an offense has been committed by the defendant, the judge or chief justice shall grant leave to file the information, otherwise the application is denied.

¶24 To establish the sufficiency of charging documents, we must read the information together with the affidavit in support of the motion for leave to file the information. *State v. Elliott*, 2002 MT 26, ¶ 26, 308 Mont. 227, ¶ 26, 43 P.3d 279, ¶ 26. The affidavit in support need not make out a prima facie case that a defendant committed an offense; a mere probability that the defendant committed the offense is sufficient. *Elliott*, ¶ 26.

¶25 Counts I and II of the charging documents allege that Harlson committed theft in violation of § 45-6-301, MCA, which provides:

> (1) A person commits the offense of theft when the person purposely or knowingly obtains or exerts unauthorized control over property of the owner and:
> (a) has the purpose of depriving the owner of the property.

The theft of property exceeding $1,000 in value constitutes felony theft. Section 45-6-301(8)(b), MCA.

¶26 As to the first count of felony theft, the amended information alleged:

> [W]ithout authority, Defendant took a vehicle owned by Angela Brown, and had the purpose of depriving her of the vehicle, at or near the Wild West Bar parking lot . . . and the vehicle is valued in excess of $1,000.00 . . . .

The amended affidavit alleged:

> On June 5, 2003, Angela Brown called the Billings Police Department (BPD) and informed BPD her truck had been stolen from the Wild West Bar Parking Lot. She reported to officer Gilluly that she had left her keys in the ignition and entered the bar to pick up her father. Marvin Whinnery told her that a man he knew as a bartender's ex-husband had just stolen her vehicle.

7

The amended affidavit also identified the man as Harlson. This affidavit is sufficient in that it establishes a probability that Harlson committed the offense. Harlson faults the amended affidavit for failing to allege that the truck exceeded $1,000 in value; however, the amended information made this allegation.

¶27 Considering the second count of felony theft, the amended information alleged:

> [W]ithout authority, Defendant exerted unauthorized control over the vehicle of Perry Metcalf, and had the purpose of depriving him of the vehicle, at or near the Wild West Bar parking lot . . . and the vehicle is valued in excess of $1000.00 . . . .

The amended affidavit alleged:

> Angela Brown advised Officer Gilluly that she did not know the Defendant but he had come up to her in the parking lot at the Wild West and asked her for a light. She observed there that the Defendant was driving a green Chevy pickup. The green pickup had been reported stolen by Perry Metcalf.

Again, this affidavit establishes a probability that Harlson committed the offense.

¶28 Count III alleged that Harlson committed the crime of criminal endangerment in violation of § 45-5-207, MCA, which provides in pertinent part:

> (1) A person who knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another commits the offense of criminal endangerment.

Relating to this charge, the amended information alleged:

> Defendant knowingly drove a stolen vehicle through Billings, near North 28th Street and 1st Avenue North, a vehicle, at speeds approaching 60 miles per hour, creating a substantial risk of death or serious bodily injury to people in the area and officers in pursuit . . . .

The amended affidavit alleged:

8

The Defendant was arrested, after a chase where the Defendant exceeded 50 miles per hour through downtown Billings, and near Custer, Terry and Miles avenue.

¶29 Harlson argues that the charging documents failed to allege a specific location, a substantial risk of death or serious bodily injury, a speed limit, or the presence of people in the area. We disagree. The charging documents made clear that Harlson drove the vehicle through downtown Billings. There is no question that driving between fifty and sixty miles per hour would violate the speed limit in a downtown area. It is highly probable that there would be pedestrians in the downtown area of Billings, and a car traveling fifty to sixty miles per hour would pose a threat to such pedestrians. The charging documents clearly establish a probability that Harlson committed the offense of criminal endangerment.

¶30 Finally, Harlson argues the charging documents do not establish probable cause to support a DUI charge. Harlson was acquitted of that charge at trial. Thus, even if the alleged error existed, it was harmless.

¶31 Since the charging documents sufficiently indicate a probability that Harlson committed all three crimes of which he was convicted, the District Court did not abuse its discretion in denying Harlson's motion to dismiss for failure of the affidavit to show probable cause.

¶32 **ISSUE 3: Did the District Court abuse its discretion when it denied Harlson's motion to sever?**

9

¶33 It is left to the discretion of the district court to decide whether to sever charges which were originally joined for trial. *State v. Riggs*, 2005 MT 124, ¶ 34, 327 Mont. 196, ¶ 34, 113 P.3d 281, ¶ 34.

¶34 In considering whether joinder is proper, § 46-11-404(1), MCA, provides:

> Two or more offenses or different statements of the same offense may be charged in the same charging document in a separate count, or alternatively, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same transactions connected together or constituting parts of a common scheme or plan. Allegations made in one count may be incorporated by reference in another count.

¶35 Harlson argues that the District Court abused its discretion in refusing to sever the two theft charges from the criminal endangerment and DUI charges because the theft charges were not of the same or similar character, they were not based on the same transaction, and they did not constitute part of a common scheme or plan. He also argues that trying these four charges together prejudiced him.

¶36 We disagree with Harlson's argument that the theft charges were not based on the same transaction as the other charges. According to the amended charging documents, Harlson was seen driving a stolen green truck at the Wild West Saloon. The charging documents further allege he then stole a different truck at the Wild West Saloon, led law enforcement on a chase through downtown Billings, and was under the influence of alcohol while doing so. All the offenses were based on the "same transactions connected together." Joinder was appropriate pursuant to § 46-11-404(1), MCA.

¶37 A party may move to sever charges that have been joined. Section 46-13-211(1), MCA, provides:

10

If it appears that a defendant or the prosecution is prejudiced by a joinder of charges or defendants in an indictment, information, or complaint or by a joinder for trial together, the court may order separate trials, grant a severance of defendants, or provide whatever other relief justice requires.

The burden is on the defendant to prove that severing the charges pursuant to § 46-13-211(1), MCA, is necessary to prevent unfair prejudice. *Riggs*, ¶ 34 (citing *State v. Southern*, 1999 MT 94, ¶ 14, 294 Mont. 225, ¶ 14, 980 P.2d 3, ¶ 14). This burden cannot be met by proving either that the defendant will face some prejudice from the joint trial or will stand a better chance of acquittal in separate trials; rather, the defendant must prove the prejudice is so great as to prevent a fair trial. *Riggs*, ¶ 34.

¶38    The following three types of prejudice may result from consolidating charges:

First, a jury may consider the criminal defendant facing multiple charges a "bad man" and accumulate evidence until it finds the defendant guilty of something. Second, a jury may use proof of guilt on one count to convict the defendant of a second count even though that proof would be inadmissible at a separate trial on the second count. Third, the defendant may be prejudiced if he or she wishes to testify on one charge but not on another.

*Riggs*, ¶ 35.

¶39    On appeal, Harlson lists all three types of prejudice and generally alleges that all three occurred; however, Harlson fails to demonstrate how he was prejudiced or how any such prejudice prevented him from receiving a fair trial. Harlson has provided no legal authority or evidence to support this contention. Such generalized claims with no supporting authority are insufficient to establish a need for severance under § 46-13-211, MCA.

11

¶40	Accordingly, the District Court did not abuse its discretion in denying Harlson's motion to sever the charges.

¶41	**ISSUE 4: Did the District Court err in denying Harlson's motion to dismiss for lack of speedy trial?**

¶42	Harlson argues that his constitutional right to a speedy trial was violated by the 408-day delay between his arrest and the beginning of his trial. He argues that the majority of this time should be charged to the State, thereby putting the burden on the State to prove that he suffered no prejudice from the delay. He also argues prejudice from the unavailability of two witnesses at trial, and contends that the delay caused him stress.

¶43	The BPD arrested Harlson on June 5, 2003, and the State filed the initial charging documents on June 10, 2003. The District Court set the case for trial on September 15, 2003, but Harlson's public defender moved for a continuance because his entire office was moving and a material witness was still recuperating from an unrelated shooting. The District Court reset the trial for January 26, 2004. Trial began that day, but Harlson's public defender then realized that his office was also representing one of the complaining witnesses. The attorney moved for a mistrial on Harlson's behalf because of this conflict, and the District Court granted the motion. The District Court reset the trial for April 12, 2004.

¶44	On March 22, 2004, the State filed the motion to amend. Harlson filed a motion to dismiss on the basis that the affidavit supporting the amended information failed to show probable cause (discussed above in Issue 2). He then filed a motion to continue the trial

12

date because the parties were still filing briefs on the motion to dismiss. He also filed a motion to sever (discussed above in Issue 3). The District Court granted the continuance and reset the trial for July 19, 2004, and the trial actually began on that day.

¶45 The District Court found that between Harlson's arrest and his actual trial, he was incarcerated for eighty-three days. Harlson was arrested on the charges in this case on June 5, 2003, and was released when he posted bond four days later. In November of 2003, the State filed a motion to have his release revoked in this case and three other cases because he was charged with unrelated drug charges in Missoula Municipal Court. When he failed to show for the hearing on the motion to revoke, the court issued a warrant. He was arrested and held for sixteen days until he posted bond. On May 18, 2004, Harlson's bonding company revoked his bond and he was incarcerated up to his July 19, 2004, trial.

¶46 It is a question of law whether a defendant has been denied the right to a speedy trial, and we review a district court's determination of this question of law for correctness. *State v. Keyes*, 2000 MT 337, ¶ 7, 303 Mont. 147, ¶ 7, 15 P.3d 443, ¶ 7.

¶47 A criminal defendant's right to a speedy trial is guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution. *State v. Price*, 2001 MT 212, ¶ 11, 306 Mont. 381, ¶ 11, 34 P.3d 112, ¶ 11. The United States Supreme Court established four factors to consider when analyzing a claimed denial of speedy trial: length of delay, the reason for the delay, the defendant's timely assertion of his right to a speedy trial, and the prejudice to the defense caused by the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972). This Court

13

adopted these factors for analyzing such claims. *See City of Billings v. Bruce*, 1998 MT 186, ¶ 19, 290 Mont. 148, ¶ 19, 965 P.2d 866, ¶ 19.

### a. Length of Delay

¶48 The time between Harlson's arrest and the beginning of trial amounts to 408 days. A delay of 200 or more days triggers further speedy trial analysis. *Bruce*, ¶ 55. The 408-day delay renders further speedy trial analysis necessary.

### b. Reason for Delay

¶49 This factor requires us to determine which party is responsible for specific periods of delay and allocate the total time of delay between the parties. *Price*, ¶ 14. If 275 or more days of delay are attributable to the State, the initial burden is on the State to show that the defendant suffered no prejudice from the delay. *Bruce*, ¶ 56. If fewer than 275 days are attributable to the State, the defendant retains the burden to demonstrate prejudice. *Bruce*, ¶ 56.

¶50 The initial delay of 102 days between Harlson's arrest and the first trial setting counts as institutional delay, and therefore is attributable to the State. *See Price*, ¶ 14.

¶51 The District Court determined that the 132-day delay between the first trial setting and the second trial setting resulted from Harlson's motion to continue. Harlson argues that he should not be penalized because the Public Defender's Office was moving or because a witness was recovering from a shooting incident. However, there is no evidence the delay was caused by any conduct on the part of the State; therefore, the delay is attributable to the defendant. *State v. Mooney*, 248 Mont. 115, 119, 809 P.2d 591, 594 (1991). *See also State v. Dess*, 184 Mont. 116, 119, 123-24, 602 P.2d 142, 144,

146 (1979) (delay caused by defendant's motion for continuance when public defender retired and asked for time for defendant's new attorney to get caught up on case attributed to defendant); *State v. Burt*, 2000 MT 115, ¶¶ 24, 28, 299 Mont. 412, ¶¶ 24, 28, 3 P.3d 597, ¶¶ 24, 28 (delay caused by defendant's motion to continue trial date for medical reasons attributable to defendant).

¶52 The District Court determined that the 76-day delay between the second and the third trial setting resulted from Harlson's motion for a mistrial and his need for new counsel. Harlson argues that any fault for this delay lies with the Public Defender's Office, because he had no way of knowing about such a conflict. Again, there is no evidence this delay was caused by any conduct on the part of the State. *Mooney*, 248 Mont. at 119, 809 P.2d at 594. *See also Dess*, 184 Mont. at 119, 123-24, 602 P.2d at 144, 146; *State v. Harvey*, 219 Mont. 402, 408, 713 P.2d 517, 521 (1986) ("delay caused by defendant's substitution of counsel should not be charged against the State") (citing *State v. Boyer*, 208 Mont. 258, 262, 676 P.2d 787, 790 (1984)). Therefore, the delay is attributable to Harlson.

¶53 The District Court determined that the final 98-day delay between the third trial setting and the actual start of trial resulted from Harlson's motions to continue the trial to allow the court more time to consider pending defense motions. Harlson argues that this delay resulted from the State's decision to file an amended information, and should therefore be charged against the State. However, as explained previously, the State satisfied the requirements of § 46-11-205, MCA, and the State filed the amended

information without seeking a continuance. Harlson's motions caused the delay, which is attributable to him.

¶54 In total, of the 408 days of delay, 102 days are attributable to the State, and 306 days are attributable to Harlson. Since fewer than 275 days of the delay are attributable to the State, the burden is on Harlson to demonstrate prejudice from the delay.

### c. Assertion of Right

¶55 To satisfy this factor, the defendant must either demand a speedy trial or file a motion to dismiss for lack of a speedy trial prior to the commencement of trial. *Bruce*, ¶ 57. Harlson filed a motion to dismiss for lack of a speedy trial on June 14, 2004, and trial began on July 19, 2004, so he asserted his right to a speedy trial in a timely fashion.

### d. Prejudice

¶56 The speedy trial guarantee is designed to minimize delay and the prejudice resulting from pretrial incarceration, anxiety and concern, and impairment of defense. *Bruce*, ¶ 68. As we previously explained, the burden is on Harlson to demonstrate prejudice from the delay.

¶57 Harlson alleges that, "as held in all the speedy trial decisions," his pretrial incarceration prejudiced him. Not all speedy trial analyses hold that prejudice is established simply by the fact of pretrial incarceration. This Court has held that 413 days of pretrial incarceration did not prejudice the defendant. *State v. Jefferson*, 2003 MT 90, ¶¶ 25-30, 315 Mont. 146, ¶¶ 25-30, 69 P.3d 641, ¶¶ 25-30. In *Jefferson*, the defendant's probation on a prior offense was revoked, so the pretrial incarceration was inevitable. *Jefferson*, ¶ 25. This Court stated: "We recognize that the right to a speedy trial is not

16

intended to prevent all pretrial incarceration. It is designed to prevent oppressive pretrial incarceration. Our inquiry focuses on whether Jefferson was '*unduly prejudiced* by his pretrial incarceration.'" *Jefferson*, ¶ 27 (citations omitted). In this case, Harlson fails to meet his burden of demonstrating how the eighty-three days of pretrial incarceration unduly prejudiced him.

¶58 In regard to the second factor, anxiety and concern, Harlson only argues that he was concerned about the trial, and that the delay made him stressed. Since anxiety and concern are an inherent part of being charged with a crime, we focus on the extent to which pretrial delay aggravated a defendant's anxiety and concern. *State v. Bowser*, 2005 MT 279, ¶ 17, 329 Mont. 218, ¶ 17, 123 P.3d 230, ¶ 17. Since Harlson fails to demonstrate how the pretrial delay aggravated his anxiety and concern, he has not carried the burden of demonstrating prejudice.

¶59 Moving to the third factor, impairment of defense, Harlson alleges that the delay prevented him from presenting two witnesses, one of whom died, and one of whom he could no longer locate. In considering the witness who died, Harlson argued to the District Court that this witness would have testified that Harlson knew the victim in Count I; however, the District Court noted that this testimony would not go to any of the elements of theft, and this witness was never disclosed prior to the first trial. In considering the witness who could not be found, Harlson argued to the District Court that this witness would have testified that the victim in Count II gave his pickup keys to that witness and Harlson's mother so that the truck could be moved. The District Court noted that Harlson's mother could testify to these facts, making the unavailable testimony

17

cumulative. Harlson fails to contest these conclusions. We agree with the District Court that the delay did not impair Harlson's defense.

¶60 Since Harlson failed to establish any prejudice from the delay in his trial, the District Court correctly denied Harlson's motion to dismiss for lack of a speedy trial.

¶61 **ISSUE 5: Did the District Court abuse its discretion in prohibiting Harlson's proposed rebuttal witness concerning the value of the trucks at issue in Counts I and II?**

¶62 We review a district court's ruling on the admissibility of testimony for abuse of discretion. *State v. Cesnik*, 2005 MT 257, ¶ 12, 329 Mont. 63, ¶ 12, 122 P.3d 456, ¶ 12.

¶63 Harlson argues that the District Court improperly prohibited testimony from a witness he characterizes as a rebuttal witness. Since Harlson fails to support his argument with legal authority, we need not consider it. M. R. App. P. 23(a)(4); *State v. Hicks*, 2006 MT 71, ¶ 22, 331 Mont. 471, ¶ 22, 133 P.3d 206, ¶ 22.

¶64 **ISSUE 6: Did the prosecutor improperly comment during closing argument on Harlson's failure to testify?**

¶65 Harlson argues that, during closing argument, the State improperly commented on his refusal to testify by discussing his failure to provide a breath sample on June 5, 2003. Harlson contends that this comment violated his constitutional right not to testify. That argument relates to the DUI charge of which Harlson was acquitted. Thus the error, if any, was harmless.

¶66    We affirm the District Court.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS