JUSTICE RICE
dissenting.
¶26 The Court concludes that the District Court erred by denying Yecovenko’s claim for ineffective assistance of counsel and grants a new trial on the sexual assault charges, Opinion, ¶¶ 23-24, concluding that Yecovenko was entitled to separate trials for the charges because the evidence filed against him in support of the sexual abuse charge was “horrific.” Opinion, ¶ 22. I do not disagree with the Court’s characterization of the evidence, but I do disagree that reversal for a new trial is appropriate.
¶27 In considering whether Yecovenko would have been entitled to separate trials, had his counsel filed a properly supported motion, we should apply the law which governs such motions. First, “[t]he burden *259 is on the defendant to prove that severing the charges pursuant to § 46-13-211(1), MCA, is necessary to prevent unfair prejudice.” State v. Harlson, 2006 MT 312, ¶ 37, 335 Mont. 25, ¶ 37, 150 P.3d 349, ¶ 37. “This burden cannot be met by proving either that the defendant will face some prejudice from the joint trial or will stand a better chance of acquittal in separate trials; rather, the defendant must prove the prejudice is so great as to prevent a fair trial.” Harlson, ¶ 37. In Harlson, we explained that the statute governing joinder of charges provides:
Two or more offenses or different statements of the same offense may be charged in the same charging document in a separate count, or alternatively, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character ....
Harlson, ¶ 34 (citing § 46-11-404(1), MCA) (emphasis added).
¶28 The Court’s opinion suffers from tunnel vision by focusing only on the evidence related to the sexual abuse charge and ignoring the evidence presented in support of the sexual assault charges. I submit that these charges, and the evidence offered in support of the charges, were of “similar character,” § 46-11-404(1), MCA, allowing Yecovenko to be tried on both charges without inordinate prejudice. Indeed, the evidence submitted regarding the sexual assault charge was similarly “horrific.”
¶29 Yecovenko was charged with two counts of sexual assault arising from the allegations of his sexual contact with the ten-year-old W.E.S. and twelve-year-old V.A.S., daughters of his girlfriend. At trial, the jury was first introduced to the sexual assault charges through the testimony of Glasgow police officer, Bruce Barstad, who interviewed W.E.S. and V.A.S. regarding their molestations. Barstad testified that V.A.S. told him that Yecovenko “had touched her chest and had rubbed her in the vaginal area with his fingers.” Barstad stated that V.A.S. informed him that this touching occurred directly on the skin and Yecovenko would often “bribe” her by offering “her something in return for her permission to allow him to [touch] her.”
¶30 Each girl then took the witness stand and testified about her respective experiences. W.E.S. stated that Yecovenko would ask to see her private parts and that Yecovenko touched and rubbed her “upper” and “lower” private parts both through her clothing and after asking her to undress. V.A.S. recounted that Yecovenko would promise her things if she allowed him to touch her. These promises, which V.A.S. called “bribes,” included money and other privileges such as having a friend over or going to a friend’s house. V.A.S. explained that “he told *260 [her] to take off [her] clothes” and he would rub his fingers on her skin, over her “breasts and [her] front private [area] down below the belt.” Further testimony revealed that Yecovenko repeatedly requested to perform oral sex on V.A.S. and that she felt “disgusted” and “bad” after theses instances.
¶31 Although the Court concludes that upon viewing the pornographic images related to the sexual abuse charge the “jury was virtually certain to be disgusted with Yecovenko,” Opinion, ¶ 22,1 respectfully submit that the jury would have been similarly disgusted after hearing the very clear testimony offered by the two young girls who were Yecovenko’s victims in the sexual assault case. This was not a trial for sexual abuse and burglary or some other dissimilar charge, for which the horrific evidence would unfairly prejudice the defendant with regard to the unrelated charge. This trial was for charges which involved similar subject matter: sexual contact with, and abuse upon, minor children.
¶32 We have recognized that there is “no reason to assume the jury will be confused and cannot keep the relevant evidence separate when the charges are few and the evidence straight forward.” State v. Southern, 1999 MT 94, ¶ 41, 294 Mont. 225, ¶ 41, 980 P.2d 3, ¶ 41. Here, the charges were few, and the evidence about each was piercingly straightforward. Further, the jury was instructed that “[e]ach count charges a distinct offense” and that they “must decide each count separately.” Nothing in the record suggests that the jurors did not follow their instructions or did not keep the relevant evidence separate or were so inflamed by the pornographic images that they convicted Yecovenko of sexual assault because of this “horrific” evidence. Indeed, there was plenty of “horrific” evidence-of similar character-also introduced in the sexual assault case. I would conclude that the jurors properly did their duty and followed the instructions. There is no reason to reverse the convictions premised upon the clear and courageous testimony of two young sexual victims simply because the accompanying sexual abuse charge included evidence with similarly horrific content.
¶33 Although defense counsel may have erred by filing an insufficient motion to sever, I would conclude the defendant was not prejudiced because he was not entitled to severance of the charges under the law.
¶34 Unfortunately, the Court’s decision today will strike a blow to future child sexual assault prosecutions. When searches are conducted of an accused’s residence, it is not uncommon to find child pornography, which gives rise to secondary charges. Today’s decision *261 will likely force double trials in such cases and thereby greatly increase the efforts the State must take to obtain convictions in each case.
¶35 I dissent.