No. 99-124

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 337

303 Mont. 147

15 P. 3d 443

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RANDY KEYES,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gary E. Wilcox, Attorney at Law, Billings, Montana

L. Sanford Selvey, Chief Public Defender, Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Cregg W. Coughlin,

Assistant Attorney General, Helena, Montana

Submitted on Briefs: June 1, 2000
Decided: December 19, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Randy Keyes (Keyes) appeals from the judgment and sentence entered by the Thirteenth Judicial District Court, Yellowstone County, on his guilty plea to the offense of felony criminal endangerment, having reserved his right to appeal adverse pre-plea rulings. In particular, he appeals from the court's denial of his motion to dismiss on speedy trial grounds. We affirm.

¶2 The sole issue on appeal is whether Keyes was denied his constitutional right to a speedy trial.

¶3 On two consecutive evenings, September 29 and 30, 1994, Keyes was involved in exchanges of gunfire from vehicles--apparently drug-related--on the streets of Billings, Montana. On the 30th, a passenger in one of the vehicles was shot and killed. The State of Montana (State) charged Keyes with deliberate homicide for the death, but Keyes fled Montana and was not arrested until August 1996 in Texas.

¶4 On April 16, 1997, the State filed an amended information charging Keyes with three alternative counts of deliberate homicide: under the felony murder rule; by accountability in violation of §§ 45-5-102 and 45-2-302, MCA; and by accountability under the theory that an unknown person was in Keyes' vehicle and fired the shots that killed the victim. After the District Court denied his motion to dismiss the amended information, Keyes applied to this Court for a writ of supervisory control. He argued that the second count did not state an offense under Montana law. We accepted jurisdiction and, agreeing with Keyes, remanded with directions that the District Court grant Keyes' motion to dismiss the second count of deliberate homicide charged against him. *State ex rel. Keyes v. Thirteenth Jud. Dist. Ct.*, 1998 MT 34, 288 Mont. 27, 955 P.2d 639.

¶5 On April 13, 1998, after remand, the State filed a second amended information, charging Keyes with attempted deliberate homicide and criminal endangerment based on his involvement in the exchanges of gunfire from vehicles on September 29, 1994. On the same date, the defense moved to dismiss the charges for lack of a speedy trial. The District Court denied the motion and, reserving his right to appeal the denial, Keyes entered into a plea agreement with the State. Pursuant to that agreement, Keyes pled guilty to felony criminal endangerment and the charge of attempted deliberate homicide was dismissed. Judgment and sentence were entered and Keyes appeals from the denial of his motion to dismiss for lack of speedy trial.

## Discussion

¶6 Was Keyes denied his constitutional right to speedy trial?

¶7 The issue of whether a criminal defendant has been denied a speedy trial is a question of law. This Court reviews district court conclusions of law to determine whether the court's interpretation of the law is correct. *State v. Maier*, 1999 MT 51, ¶ 74, 293 Mont. 403, ¶ 74, 977 P.2d 298, ¶ 74. In reviewing a speedy trial claim, we balance the four factors set forth in *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101: (1) length of delay; (2) reason for the delay; (3) defendant's assertion of the right; and (4) prejudice to the defense.

¶8 In *City of Billings v. Bruce*, 1998 MT 186, ¶¶ 54-58, 290 Mont. 148, ¶¶ 54-58, 965 P.2d 866, ¶¶ 54-58, we clarified that the appropriate analysis of speedy trial claims includes both a "straight balancing test" and a "motive test," giving greatest consideration to the reasons for delay. If the length of delay is at least 200 days, we will next consider the reason for the delay and which party carries the burden with regard to *Barker's* prejudice prong. A delay of 275 days attributable to the State is sufficient to shift the burden to the State to demonstrate that the defendant has not been prejudiced by the delay. If the right to speedy trial has been invoked at any time prior to the commencement of trial, the third prong of the *Barker* test is satisfied. Finally, our consideration of the fourth *Barker* factor, prejudice, will continue to include the traditional questions of pretrial incarceration, anxiety and concern of the defendant, and impairment to the defense.

¶9 In the present case, the parties initially disagree about the date on which the speedy trial clock began to run. Keyes asserts that the clock began to run on October 17, 1994, when the first charge was filed against him. The State contends that, because the April 13, 1998

information is based on the events of September 29, rather than the events of September 30 as were the earlier complaint and informations, the speedy trial clock did not begin to run until it filed the second amended information on April 13, 1998.

¶10 The State's argument is intriguing. It is fatally flawed, however, because it was not presented to the District Court. We will not consider a change in theory from that advanced in the trial court and, therefore, we decline to address the merits of the State's argument. *See, e.g., State v. Henderson* (1994), 265 Mont. 454, 458, 877 P.2d 1013, 1016.

¶11 Therefore, we begin counting days as of October 17, 1994, when the first charge was filed against Keyes. The number of days between that date and the date on which Keyes entered his guilty plea, July 15, 1998, is 1,350 days, clearly sufficient to trigger further speedy trial analysis. *See Bruce*, ¶ 55.

¶12 Of that total delay, there is no dispute that Keyes is responsible for 795 days. That leaves 555 days remaining to be allocated between Keyes and the State.

¶13 Of those 555 days, the parties disagree only as to responsibility for the time consumed by Keyes' writ proceeding. We have indicated that time associated with a defendant's supervisory control proceeding, regardless of the result, is attributable to the defendant or is at least neutral time not rationally chargeable to either party unless the State somehow acted in bad faith or its position was so untenable as to infer intentional delay. *See State v. Forsyth* (1988), 233 Mont. 389, 404-05, 761 P.2d 363, 373. While a defendant generally cannot apply for a writ and then later be heard to argue that his right to a speedy trial was violated because of the time lapse involved, an exception to that rule exists when the position taken by the prosecution which led to the application for writ was insupportable. *See United States v. Loud Hawk* (1986), 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640.

¶14 In this case, we conclude the time associated with Keyes' writ proceeding is attributable to the State. The necessity of the application for the writ and the delay occasioned by consideration of the application are both directly attributable to the confusing nature of the amended charges under which the State sought to prosecute Keyes. The State filed a charge that did not exist under Montana law. *See Keyes*, ¶ 23. It is obvious what the State could have done to prevent the resulting delay. Less clear is anything Keyes could have done, except go to trial on a charge that did not exist.

¶15 Keyes asserted his right to trial in a timely manner, thus satisfying the third element of

the *Barker* test. The fourth element, prejudice, does not weigh in his favor, however. This is true despite the fact that attributing the writ-related time to the State results in a total delay attributable to the State of 555 days, which shifts the burden to the State to demonstrate that the defendant has not been prejudiced by the delay. *See Bruce*, ¶ 56.

¶16 Keyes admitted to the District Court that he could not demonstrate actual prejudice to the defense case or trial preparation. He argues, however, that other factors indicate the speedy trial motion is warranted. More specifically, he asserts that his State-caused 555 days of pretrial incarceration is sufficient, in and of itself, to satisfy the *Barker* prejudice test.

¶17 "[T]he importance of [the prejudice] factor and the degree of prejudice to establish denial of speedy trial will vary based upon other considerations, such as the length of delay and the reason for delay." *Bruce*, ¶ 58. Under the circumstances presented here, we conclude that Keyes' claim of prejudice from the mere passage of time is unpersuasive.

¶18 Keyes fled from Montana's jurisdiction after the events of September 30, 1994, and remained a fugitive from justice for nearly two years. During that time, he demonstrated absolutely no interest in obtaining a speedy trial, preserving evidence or witnesses, or advancing his legal defenses. As the District Court stated, even if Keyes were able to show prejudice, it would be virtually impossible to delineate between prejudice occurring as a result of his two-year flight, and any prejudice occurring to his case afterwards. As to any prejudicial effects of Keyes' lengthy pretrial incarceration, there can be no doubt in this case that a high bail and resulting incarceration were necessary in light of the very serious offenses with which Keyes was charged and his demonstrated ability and willingness to abscond from justice.

¶19 Given Keyes' concession that there was no prejudice to his defense under the fourth element of the *Barker* test, and the other considerations discussed above, we conclude that the State has met its burden of establishing that Keyes was not prejudiced by the delay. We further conclude that the District Court was correct in ruling that the overall balance tilts in favor of the State on Keyes' speedy trial claim. We hold, therefore, that Keyes' constitutional right to a speedy trial was not violated.

¶20 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART