No. 05-674

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 65

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

SPENCER O. LaGREE,

      Defendant and Appellant.

APPEAL FROM:    The District Court of the Seventeenth Judicial District,
In and For the County of Valley, Cause DC 04-16 and DC 04-17,
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Janet P. Christoffersen, Christoffersen Law Office, Sidney, Montana

      For Respondent:

          Honorable Mike McGrath, Attorney General; Carol E. Schmidt,
Assistant Attorney General, Helena, Montana

          Kenneth Oster, County Attorney, Glasgow, Montana

Submitted on Briefs:  August 8, 2006

Decided:  March 13, 2007

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Spencer O. LaGree (LaGree) appeals from the order of the Seventeenth Judicial District, Valley County, denying LaGree's motion to dismiss for violation of his right to a speedy trial. We affirm.

¶2 We address the following issue on appeal:

¶3 Did the District Court err by denying LaGree's motion to dismiss for lack of speedy trial?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On July 12, 2004, as Cause No. DC-04-16 (Case A), the State filed an information charging LaGree with the offenses of count I: criminal mischief, a felony, as specified in § 45-6-101, MCA (2003); count II: stalking, a misdemeanor, as specified in § 45-5-220, MCA (2003); and count III: partner or family member assault, a misdemeanor, as specified in § 45-5-206, MCA (2003). All offenses stem from incidents occurring in Glasgow, Montana, on or about June 9-11, 2004.

¶5 Subsequently, on or about July 21, 2004, while released on bond, LaGree violated a temporary order of protection which had been granted to his wife, LeAnna LaGree, on June 14, 2004, by allegedly leaving harassing and/or threatening telephone messages on LeAnna's residential voice mail. LaGree was arrested at that time and was incarcerated continuously thereafter. Based on these actions, LaGree was also charged with stalking, a felony, in violation of § 45-5-220, MCA (2003), as Cause No. DC-04-17 (Case B). The State also filed a notice of its intention to treat LaGree as a persistent felony offender for sentencing purposes.

2

¶6    LaGree entered pleas of not guilty on all charges in both cases. The District Court scheduled a trial for Case A on January 4, 2005, and for Case B on January 12, 2005. An omnibus hearing was conducted on October 4, 2004, wherein LaGree, by counsel, indicated that there were no issues involving mental disease or defect. However, on December 23, 2004, LaGree's trial counsel filed an amended motion in both cases requesting a mental examination of LaGree. As a result, the District Court vacated the trial dates and ordered the examination. A competency hearing was set for March 21, 2005, but following receipt of the examiner's report, LaGree's counsel withdrew the mental disease and defect claim. Thereafter, the District Court reset the trial dates for May 17 (Case A) and May 24, 2005 (Case B). As calculated by the District Court, the delay caused by the raising and reviewing of the mental disease and defect issue was approximately 88 days.[1]

¶7    On April 28, 2005, the State filed a motion to reschedule the trial date for Case A, because the forensic scientist would be unable to testify on May 17. The District Court granted the motion and rescheduled the trial for July 5, 2005. On May 10, 2005, LaGree filed a motion to dismiss the pending charges against him in both matters on the grounds that the delay in bringing these matters to trial violated his right to a speedy trial. Then, on May 12, 2005, the State again moved to reschedule the trials because its chief witness needed to undergo major medical treatment and would be unable to testify until after July

---

[1]From December 23, 2004, to March 21, 2005, is 88 days. There is a question from the record regarding the correct date of the filing of the motion, but that is not an issue on appeal and does not affect the analysis herein.

15, 2005. The District Court, finding good cause with the State's request, ordered the trials be reset for August 10 and August 30, 2005.

¶8      In June 2005, LaGree filed an affidavit in each case stating that he had not requested or consented to a mental examination and also contending that he "suffered anxiety and concern because of [his] long incarceration awaiting [his] trials." After conducting a hearing on August 4, 2005, the District Court denied LaGree's motion to dismiss for lack of a speedy trial. The court found that while there had been sufficient delay to place the burden of demonstrating lack of prejudice upon the State, the State had met its burden, having demonstrated a lack of prejudice.

¶9      Subsequently, pursuant to a plea agreement which incorporated Case A and Case B, LaGree entered a plea of guilty to the charges in Case A of criminal mischief, stalking, and partner or family member assault. On November 10, 2005, the District Court entered its judgment sentencing LaGree for those charges. At that time, the court also granted the State's motion to dismiss the felony charge of stalking in Case B, and the State also withdrew its motion to treat LaGree as a persistent felony offender for sentencing purposes. Further, LaGree reserved the right to appeal the District Court's denial of his pretrial motions to dismiss for lack of speedy trial, which he now appeals.[2]

## STANDARD OF REVIEW

¶10     Whether a defendant has been denied the right to a speedy trial is a question of law. *State v. Keyes,* 2000 MT 337, ¶ 7, 303 Mont. 147, ¶ 7, 15 P.3d 443, ¶ 7. We review

___

[2]With the dismissal of the charges in Cause No. DC-04-17 (Case B), only the District Court's denial of LaGree's motion for lack of a speedy trial in Cause No. DC-04-16 (Case A) is addressed herein.

4

a district court's determination of law for correctness. *Keyes,* ¶ 7. "We review a district court's findings of fact to determine whether they are clearly erroneous." *State v. Burt*, 2000 MT 115, ¶ 6, 299 Mont. 412, ¶ 6, 3 P.3d 597, ¶ 6 (citation omitted).

## DISCUSSION

¶11 ***Did the District Court err by denying LaGree's motion to dismiss for lack of speedy trial?***

¶12 LaGree argues the District Court erred in denying his motion to dismiss. Although contesting the District Court's factual finding that only 338 days, and not the entire delay of 426 days, was attributable to the State, he nonetheless argues that even the 338-day delay was a violation of his speedy trial rights. LaGree contends that this delay caused him extreme anxiety and prejudice, as he was incarcerated during the entirety of his case and was denied his medications for his mental conditions for most of his incarceration.

¶13 The State argues LaGree was not denied his constitutional right to a speedy trial. The State contends it met its burden of demonstrating that LaGree did not suffer any prejudice by showing that: (1) much of LaGree's incarceration was the result of a probation violation on a separate, unrelated case; (2) LaGree's anxiety, for which there was little evidence, resulted from the charges themselves and the revocation of his probation on an unrelated charge, and not from the delay herein; and (3) LaGree's defense was not compromised by the delay.

¶14 Both the Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution guarantee a criminal defendant the right to a speedy trial. *State v. Price*, 2001 MT 212, ¶ 11, 306 Mont. 381, ¶ 11, 34 P.3d 112, ¶ 11.

5

To determine whether a violation of this right occurred, we consider: "(1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right to a speedy trial by the defendant; and (4) the prejudice to the defense." *City of Billings v. Bruce,* 1998 MT 186, ¶ 19, 290 Mont. 148, ¶ 19, 965 P.2d 866, ¶ 19 (citing *Barker v. Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972)). We have held that the "'greater the degree of fault by the State in causing the delay, the less the delay or prejudice that need be shown. Where there is no fault on the part of the State for [the] delay, greater prejudice, and presumably greater delay, would have to be shown.'" *State v. Highpine,* 2000 MT 368, ¶ 14, 303 Mont. 422, ¶ 14, 15 P.3d 938, ¶ 14 (quoting *Bruce,* ¶ 53).

### a. Length of Delay

¶15    LaGree experienced a 426-day delay between initial charge and the scheduled trial date for Case A. A delay of 200 or more days triggers further speedy trial analysis. *Bruce*, ¶ 55. Thus, the 426-day delay requires further speedy trial analysis.

### b. Reason for Delay

¶16    "In considering the reasons for delay, the court must determine which party is responsible for specific periods of delay, allocating the total time of delay between the parties." *Price,* ¶ 14 (citing *State v. Hardaway,* 1998 MT 224, ¶ 15, 290 Mont. 516, ¶ 15, 966 P.2d 125, ¶ 15). If 275 or more days of delay are attributable to the State, "the burden should shift to the State to demonstrate that the defendant has not been prejudiced by the delay." *Bruce,* ¶ 56.

6

¶17    The District Court found that of the 426 days of delay, 338 days were attributable to the State, and determined this to be "institutional delay."[3] LaGree argues that the court erred, and the State should be charged with the full 426 days of delay. He asserts that the 88-day delay caused by his attorney requesting a mental examination should be charged to the State because he did not want or request the mental examination and, in fact, vehemently opposed it. Beyond noting the provisions of § 46-14-202, MCA, LaGree offers no authority in support of this argument, and, in response, the State argues that the court properly determined that only 338 days of delay were attributable to the State, because a defendant who is represented by an attorney in court is bound by the attorney's motions.

¶18    We initially note that, regardless of the resolution of the dispute over attribution of the 88 days, the District Court correctly concluded that even a delay of 338 days was sufficient, being over 275 days, to shift the burden to the State to demonstrate that LaGree did not suffer prejudice as a result of the pretrial delay. *Bruce*, ¶ 56. However, because the balancing test considers "[t]he greater the degree of fault by the State in causing the delay," *Bruce*, ¶ 53, we deem it necessary to determine the party responsible for the 88 days in dispute and to correctly allocate the total time of delay between the parties.

¶19    Section 46-14-202(1), MCA (2003), provides that upon a written motion by "the defendant or the defendant's counsel" requesting an examination of a defendant

---

[3]Institutional delay, though charged to the State, is weighed less heavily against the State then intentional delays. *State v. Blair*, 2004 MT 356, ¶ 19, 324 Mont. 444, ¶ 19, 103 P.3d 538, ¶ 19. The appellant does not challenge this finding of the District Court.

regarding mental fitness to proceed, the district court must initiate that process by appointing a qualified professional or requesting Montana State Hospital to examine the defendant. In *State v. Bartlett*, 271 Mont. 429, 432, 898 P.2d 98, 100 (1995), this Court explained:

> Section 46-14-202, MCA, does not require that the defendant must agree to a mental examination. If one of the listed persons files a written motion, or if the issue of the defendant's fitness to proceed is raised by one of the listed persons, the court "*shall*" arrange for such an examination. The word "shall" is compulsory.

¶20 Given the provisions of this statute, we must reject LaGree's argument that the delays occasioned by his counsel's request for a psychological evaluation, because he opposed it, must be attributed to the State. Pursuant to statute and our cases, he was bound by his counsel's action in this regard. We thus conclude that the District Court correctly attributed 338 days of the delay to the State, because the 88-day delay caused by the request for an evaluation was appropriately charged to LaGree. Nonetheless, because 275 days of the delay are attributable to the State, the burden of demonstrating lack of prejudice to LaGree lies with the State.

### c. Assertion of Right

¶21 When considering the third factor, this Court has held "that if the right to speedy trial is invoked at any time prior to the commencement of trial, either by demanding a speedy trial, or by moving to dismiss for failure to provide a speedy trial, the third prong is satisfied." *Bruce*, ¶ 57. LaGree filed a motion to dismiss for lack of a speedy trial on May 10, 2005, almost three months prior to his trial date of July 5, 2005, thereby properly asserting his right to a speedy trial.

8

*d. Prejudice*

¶22 "The speedy trial guarantee is designed to minimize delay and the prejudice resulting from pretrial incarceration, anxiety and concern, and impairment of defense." *State v. Harlson*, 2006 MT 312, ¶ 56, 335 Mont. 25, ¶ 56, 150 P.3d 349, ¶ 56 (citing *Bruce*, ¶ 68). If the State is able to satisfy its burden of demonstrating "that the defendant has not been prejudiced by the delay, the burden will shift to the defendant to show he/she has been prejudiced." *Hardaway*, ¶ 23.

¶23 LaGree was incarcerated prior to his trial in this case. However, for speedy trial purposes, prejudice is not established by the simple fact of pretrial incarceration. In *State v. Jefferson,* 2003 MT 90, ¶¶ 25-30, 315 Mont. 146, ¶¶ 25-30, 69 P.3d 641, ¶¶ 25-30, we held that 413 days of pretrial incarceration did not prejudice the defendant. Because the defendant's probation on a prior offense was revoked, the pretrial incarceration was inevitable. *Jefferson,* ¶ 25. We stated:

> the right to a speedy trial is not intended to prevent all pretrial incarceration. It is designed to prevent oppressive pretrial incarceration. *State v. Longhorn,* 2002 MT 135, ¶ 36, 310 Mont. 172, ¶ 36, 49 P.3d 48, ¶ 36. Our inquiry focuses on whether Jefferson was "*unduly prejudiced* by his pretrial incarceration." *Longhorn,* ¶ 36 (quoting *State v. Johnson,* 2000 MT 180, ¶ 26, 300 Mont. 367, ¶ 26, 4 P.3d 654, ¶ 26).

*Jefferson*, ¶ 27.

¶24 Here, the District Court found that a significant portion of LaGree's pretrial incarceration, beginning on October 4, 2004, coincided with an incarceration order for a probation violation in Cause No. DC-02-08, a separate case, and additionally that LaGree

9

was credited "in DC-02-08 for every day of incarceration since June 11, 2004."[4]  As such, the State contends that LaGree's "[i]ncarceration on different charges negates any prejudice from incarceration while awaiting trial." *State v. Bowser,* 2005 MT 279, ¶ 15, 329 Mont. 218, ¶ 15, 123 P.3d 230, ¶ 15 (citing *State v. Gould*, 273 Mont. 207, 217, 902 P.2d 532, 539 (1995); *State v. Hembd*, 254 Mont. 407, 414, 838 P.2d 412, 416 (1992)).

¶25    While acknowledging that incarceration due to a different charge may serve to negate prejudice resulting from incarceration while awaiting trial on the current charge, LaGree offers a factual argument that he would not have been incarcerated but for the charges filed against him in this matter.  He insists that even though he faced a probation violation proceeding following his arrest on this charge in the summer of 2004, he did not begin to serve any time on his probation violation until mid-April 2005.  LaGree additionally contends that, regardless of the probation violation, he still would have been incarcerated for this matter, and, therefore, his pretrial incarceration was both oppressive and prejudicial.

¶26    First, as the State notes, LaGree offers no support in his briefing for his assertion that he did not begin to serve time following revocation for his probation violation in

---

[4]LaGree appeared on a probation violation in Cause No. DC-02-08 on October 4, 2004, at which time he was being held on the charges in this case, and remained incarcerated for purposes of the probation violation pending his revocation hearing on December 20, 2004.  On December 20, 2004, LaGree was sentenced to a five-year commitment to the Department of Corrections, for which he was credited for every day of incarceration from June 11, 2004—his initial arrest date in this matter—until December 20, 2004, and was thereafter in the custody of the Department of Corrections.

DC 02-08 until mid-April 2005.[5]  Nor does LaGree direct this Court to evidence in the record which would establish that the District Court's factual finding that he began serving time in DC 02-08 on October 4, 2004, was clearly erroneous.  Moreover, LaGree's contention that, regardless of the probation violation, he still would have been incarcerated for the offenses charged herein, and thus suffered oppressive incarceration, is without merit under *Bowser, Gould,* and *Hembd*.  As in those cases, LaGree's incarceration for purposes of his revocation proceeding undermines his pretrial incarceration argument.  Further, he has not otherwise demonstrated that his incarceration caused him extraordinary prejudice.

¶27    Regarding the factor of anxiety and concern, we have noted that "[a]nxiety and concern are an inherent part of being charged with a crime." *Blair*, ¶ 29 (citations omitted).  Therefore, this Court concentrates on the extent to which the pretrial delay has aggravated a defendant's anxiety and concern. *Bowser*, ¶ 17 (citing *Jefferson,* ¶ 32).  We have held that "the State's burden to show lack of anxiety lessens considerably when marginal evidence of anxiety is presented." *State v. Weeks*, 270 Mont. 63, 74, 891 P.2d 477, 483 (1995) (citation omitted).

¶28    LaGree argues very briefly that he suffered "overwhelming anxiety," particularly because he claims he was denied the benefit of medication for his depression, which had "very real ill effects."  The District Court found there was:

> only marginal evidence of anxiety resulting from the delay.  That marginal
> evidence consisted of Defendant's statement in his affidavit that he suffered

---

[5]LaGree testified at the hearing that, following his re-sentencing in DC 02-08, he was not physically *transferred* to the state prison until April 13, 2005.

anxiety and concern because of his long incarceration waiting for trial. However, such anxiety is inherent in incarceration and as stated above, much of that incarceration in this case followed probation revocation.

The court also found LaGree's claims of anxiety due to the failure of the State to adequately provide him with his medication to be "self-serving" and concluded that "[a]s such, it should not be used to support any argument for prejudice herein."

¶29 This Court defers to a district court's findings unless they are clearly erroneous. *Bowser*, ¶ 19 (citation omitted). Here, the District Court found that the anxiety LaGree experienced was an inherent result of his incarceration—much of which was the product of his aforementioned probation revocation—and that his testimony regarding his lack of medication was not persuasive in reaching the conclusion that LaGree was not unduly prejudiced by anxiety and concern from the delay. In *City of Fairview v. Deming*, 238 Mont. 496, 778 P.2d 876 (1989), we stated:

> "The credibility of witnesses and the weight to be given their testimony are matters for the District Court's determination in a nonjury case. (Citation omitted.) Thus, in examining the sufficiency of evidence, we must view the same in a light most favorable to the prevailing party, and we will presume the findings and judgment by the District Court are correct. (Citation omitted.)"

*City of Fairview*, 238 Mont. at 498, 778 P.2d at 878 (quoting *Lumby v. Doetch*, 183 Mont. 427, 431, 600 P.2d 200, 202 (1979)). Here, the District Court found LaGree's testimony on this issue was not credible. On appeal, LaGree offers only a generalized and essentially unsupported assertion concerning anxiety and that his lack of medications affected his ability to concentrate and focus. We conclude that he has not demonstrated error in the District Court's findings and conclusions in this regard.

12

¶30   Lastly, we examine whether the delay caused any impairment to LaGree's defense. This is the most important factor to be considered in determining prejudice. *See Bruce,* ¶ 19. Impairment of one's defense may also be the most difficult form of prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown. *See Blair, ¶* 32.

¶31   The District Court found the State had presented proof that all witnesses were available and had sufficient recall of events and that no evidence had been lost during the delay. LaGree does not dispute this finding. Instead, his arguments again focus on the lack of proper medication, which he asserts hindered his ability to read and concentrate, thereby hindering his defense. Moreover, LaGree argues that his trial counsel was concerned enough to seek a psychological examination concerning his fitness to proceed.

¶32   The District Court found that LaGree's claim of impairment of concentration was "offset by the manner in which Defendant testified at the hearing." The court found that LaGree remained focused on the issues of the pending motion and effectively responded to the inquiries of counsel. Although LaGree responds that the only reason he was able to testify well at the hearing was because the testimony related directly to his medications—a subject he had been focused upon—he offers nothing to illustrate how his alleged lack of concentration on other subjects impacted his defense in such a way as to cause prejudice. Moreover, LaGree's contention that his counsel's request for a psychological examination illustrates his impairment is not convincing. Previously, in arguing for attribution of delay, LaGree contended that the psychological exam was

unneeded and unwanted. Now, LaGree maintains the psychological exam was evidence of his impairment.

¶33 After considering the factors of the balancing test to be applied, we conclude that the District Court correctly determined that the State rebutted the presumption of prejudice against LaGree, which arose from the institutional delay it occasioned herein, and that LaGree has offered nothing from which to conclude otherwise. For these reasons, we conclude that the District Court correctly denied LaGree's motion to dismiss for lack of a speedy trial.

¶34 Affirmed.


/S/ JIM RICE


We concur:


/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS