FILED

02/07/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0308

DA 21-0308

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 25

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ROBERT LEROY JAMES ALLERY,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC-17-479(d)
Honorable John W. Parker, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Michael Marchesini, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Christine Hutchison,
Assistant Attorney General, Helena, Montana

          Josh Racki, Cascade County Attorney, Carolyn H. Mattingly, Matthew
Robinson, Deputy County Attorneys, Great Falls, Montana

                Submitted on Briefs:  December 7, 2022

                      Decided:  February 7, 2023

Filed:

_____
                    Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Robert Allery appeals the Eighth Judicial District Court's conclusion that a more than three-year delay between his arrest and trial did not violate his constitutional right to a speedy trial. Allery initially faced a prolonged wait to get a bed at the Montana State Hospital to be evaluated for his mental fitness to stand trial. Once at MSH, Allery's fitness for trial improved, but it decompensated after he was sent back to jail and endured another lengthy wait. This decompensation led to a second admission to MSH before the case finally went to trial, at which time Allery was convicted. Upon full review of the record and the District Court's analysis, we conclude that Allery suffered excessive institutional delay that violated his speedy trial right. We accordingly reverse the District Court and vacate Allery's conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2      Responding to a 9-1-1 call about an assault, Great Falls police encountered Allery walking in an alley the afternoon of August 4, 2017. Allery wore no shirt or shoes and was carrying a plastic tote lid and a water bottle. He spoke erratically and nonsensically to the police, who booked him into the Cascade County Detention Center. Allery soon after was charged with assault with a weapon, in violation of § 45-5-213(1)(a), MCA.

¶3      The District Court appointed Allery counsel and set trial for November 13, 2017. By early October, however, the prosecutor and defense counsel agreed that Allery needed a mental health evaluation to determine his fitness to stand trial. Allery's counsel moved for an evaluation. On November 29, 2017, the court suspended proceedings and ordered

an evaluation. The order directed the Cascade County Sheriff to transfer Allery to MSH as soon as there was an opening. MSH was to accept and care for Allery for up to 60 days and to report its findings regarding his fitness to proceed and whether medications would be helpful.

¶4 MSH did not have an opening for more than eight months. Allery spent that time waiting in the county jail, where the record does not indicate he had access to a medication assessment or mental health treatment. Allery at last was transferred to MSH on August 8, 2018. Allery faced further delays once he arrived. When the 60-day evaluation period was almost up, the State moved for an extension, citing MSH staffing shortages. The court granted the State another month. When that month was up, the State again requested, and the court again granted, an extension due to MSH staffing shortages.

¶5 MSH completed Allery's first fitness evaluation on December 10, 2018—more than a year after the court had ordered it. The MSH evaluation concluded that Allery was not fit to proceed with trial because he was unable to understand the case against him or to assist his attorney. Evaluators determined that Allery was suffering from a psychotic disorder and prescribed him an antipsychotic medication. They predicted that continued treatment could facilitate Allery's fitness for trial. The court accordingly suspended criminal proceedings and committed Allery to MSH to regain fitness.

¶6 Following several months of treatment, Allery was evaluated a second time in March 2019. MSH evaluators again concluded that Allery's psychotic symptoms impaired his fitness to proceed. Allery had started to refuse his medication in late December 2018, complaining about side effects. In consultation with Allery, his psychiatrist increased the

medication's dosage and ordered an observation protocol to ensure Allery was taking his medication. MSH evaluators predicted that more care would lead to fitness "in the near future." Evaluators also concluded, based on the available evidence, that Allery had been acutely psychotic at the time of the alleged assault, suggesting that he was unable to appreciate the criminality of his conduct and conform his conduct to the requirement of the law.

¶7 When they evaluated him for the third time two months later, evaluators found Allery fit. Allery could speak rationally about his case and appeared able to assist his counsel. Since the last evaluation, Allery had chosen to discontinue all medication, citing negative side effects. Nevertheless, evaluators stated that his energy level had improved, that he had not voiced delusional beliefs, and that he had not demonstrated grossly psychotic symptoms. Allery agreed that although he would prefer to try to avoid taking medication, he would accept medication if he began to decompensate. MSH's fitness determination was cautious given that Allery still was suffering from a psychotic disorder. Evaluators stated, "Mr. Allery's improvements are fairly recent and therefore may be tenuous. As such, we recommend that he remain at [MSH] until his hearing so that he can be monitored for psychiatric decompensation and his recent treatment gains can be maintained."

¶8 On June 12, 2019, the District Court held a hearing discussing Allery's recent fitness. Despite evaluators' recommendation that Allery remain at MSH for monitoring and treatment, the court ordered Allery back to jail. The judge stated that he had it "on good authority" that MSH could use an extra bed, and the prosecutor agreed to arrange

transport. Allery's trial was set for October 15, 2019. In late September, the State moved to continue the trial, citing a conflicting trial commitment. The court granted the continuance and reset trial for late January 2020. Throughout this six-month period, Allery remained in jail. Just before trial, Allery's counsel requested another mental health evaluation, and a private evaluator determined that Allery once again was unfit to proceed with trial.

¶9 The court ordered Allery back to MSH. MSH staff described Allery at the time of his re-admission as thin, pale, hyperverbal, perseverative, and delusional. Evaluators described how Allery's condition had deteriorated during his six months in jail, in part due to his not taking his prescribed psychiatric medication. Allery was prescribed a new psychiatric medication and was provided treatment. By April 2020, MSH evaluators found Allery fit again, but strongly urged the court to keep Allery at MSH until his court date so he could maintain clinical stability. They stated, "We are concerned that returning him to jail prematurely might cause his condition to deteriorate; a resurgence of his psychotic symptoms might once again impair his fitness to proceed with this case."

¶10 This time, the court allowed Allery to stay at MSH, and Allery maintained fitness. Allery's trial was rescheduled from July 6, 2020, to August 31, 2020, and, finally, to October 26, 2020. These continuances were for various reasons, such as prosecutorial military leave, evidentiary disputes, and a COVID lockdown at the jail preventing transport. After the court granted a continuance to August 31, Allery moved to dismiss for lack of a speedy trial. The parties briefed the motion, and it remained pending.

¶11 Beginning October 26, 2020, the court held a three-day trial. A Cascade County jury found Allery guilty of assault with a weapon. Due to Allery's previous decompensation at the jail, the court sent Allery to MSH pending sentencing. Allery's presentence investigation report included a recent MSH evaluation reaffirming that Allery's psychotic symptoms at the time of his crime rendered him unable to appreciate the criminality of his behavior and to conform his behavior to the requirements of the law. *See* § 46-14-311, MCA. MSH evaluators and the report thus recommended Allery be committed to the Department of Public Health and Human Services, with an initial placement at the MSH forensic facility so that he could continue to benefit "from the stability and support offered by an inpatient facility." Following their recommendation, the judge committed Allery to the Montana Hospital-Galen (the site of MSH's forensic facility) to serve a twenty-year term, with ten years suspended.

¶12 On the same day as sentencing, the District Court addressed Allery's motion to dismiss for lack of speedy trial. The court found a delay of 1,179 days—over 800 of which the court determined was institutional delay. The court "lightly" attributed this institutional delay to the State. The court also found that Allery had "serious psychological disorders that benefited from institutional care but were not aided by incarceration." The court determined that Allery's two stays at MSH had somewhat mitigated the effect of substantial pre-trial delay. Finally, the court appeared to find no explicit objections by Allery to the delay but did note that Allery had "expressed feelings of anxiety related to the delay." Balancing these various findings, the court concluded that Allery's right to a speedy trial was not violated.

## STANDARDS OF REVIEW

¶13 We review de novo a trial court's conclusion about whether a criminal defendant's speedy trial right was violated. *State v. Chambers*, 2020 MT 271, ¶ 6, 402 Mont. 25, 474 P.3d 1268. We review for clear error the factual findings underlying a trial court's speedy trial analysis. *Chambers*, ¶ 6.

## DISCUSSION

¶14 *Did the 1,179-day delay between Allery's arrest and trial violate his constitutional right to a speedy trial?*

¶15 Under Montana law, criminal proceedings must be suspended when a defendant is deemed unfit to proceed with trial due to a mental health condition. Section 46-14-221(2)(a), MCA. Courts must commit unfit defendants to the custody of the Department of Public Health and Human Services for restorative treatment. Section 46-14-221(2), MCA. The State can resume criminal proceedings if a defendant regains fitness. *State v. Mosby*, 2022 MT 5, ¶ 25, 407 Mont. 143, 502 P.3d 116. Part of this statutory commitment scheme is the understanding that jail is not a "suitable facility" for committed examination (§ 46-14-202(2), MCA) or an "appropriate mental health facility" for restorative treatment (§ 46-14-221(2), MCA).

¶16 This case brings focus to an institution that has been charged with accepting most criminal defendants in Montana in need of evaluation and treatment—the forensic facility at MSH. A shortage of staffing and space has backlogged the facility in recent years. *See* Katheryn Houghton, *Long Waits for Montana State Hospital Leave Psychiatric Patients in Jail*, Missoulian, Mar. 17, 2022, https://perma.cc/58FG-ZZJX; *Fouts v. Mont. Eighth*

*Judicial Dist. Court*, 2022 MT 9, 407 Mont. 166, 502 P.3d 689 (reversing an October 2021 contempt order compelling MSH's forensic facility to accept a defendant in need of treatment after the facility had placed her on a waitlist due to no available bedspace). Allery experienced this backlog when he waited over a year to be evaluated and when he was ordered back to jail to free up an MSH bed. Allery argues that the amount of delay he experienced violated his constitutional right to a speedy trial.

¶17 The fundamental right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article II, § 24, of the Montana Constitution. *State v. Ariegwe*, 2007 MT 204, ¶ 20, 338 Mont. 442, 167 P.3d 815. The speedy trial provision is meant to minimize lengthy pre-trial incarceration and the detrimental disruption that such incarceration causes. *Ariegwe*, ¶ 89 (quoting *Barker v. Wingo*, 407 U.S. 514, 532-33, 92 S. Ct. 2182, 2193 (1972)). We use a four-factor balancing test to determine if a criminal defendant's speedy trial right has been violated, considering length of delay, reasons for delay, the accused's responses to delay, and prejudice to the accused. *Ariegwe*, ¶ 113.

**Factor One: Length of Delay**

¶18 A pre-trial delay of 200 days triggers a speedy trial analysis. *Ariegwe*, ¶ 107. The undisputed interval between Allery's arrest and his trial was 1,179 days, so our analysis continues.

¶19 The longer a delay stretches beyond the 200-day trigger date, the stronger the presumption becomes that the delay was prejudicial and the heavier the State's burden becomes to justify the delay. *Ariegwe*, ¶ 107. In *Ariegwe*, the delay stretched 408 days—

twice the trigger amount—and the State accordingly was required to provide "particularly compelling justification for the delay" and to make a "highly persuasive showing" that the accused was not prejudiced by the delay. *Ariegwe*, ¶ 123. The delay in Allery's case stretched nearly six times the 200-day trigger period. Consequently, the State must provide proportionally compelling justification for the delay (analyzed under Factor Two), and Allery enjoys a very strong presumption that he was prejudiced by the delay (analyzed under Factor Four). *See Ariegwe*, ¶ 123.

**Factor Two: Reasons for Delay**

¶20    We identify each period of delay, attribute it to the appropriate party, and assign weight based on its reason. If the State delays a case in bad faith, the delay weighs more heavily against it than if the State is negligent in prosecuting a case. Institutional delays, on the other hand, are delays outside of a prosecutor's control—such as overcrowded court dockets. These systemic delays weigh less heavily against the State than deliberate or negligent delays, but nevertheless they weigh against the State. *Ariegwe*, ¶ 108. Even though prosecutors do not cause institutional delays, these delays weigh against the State because the State bears the responsibility to bring a defendant to trial. *Chambers*, ¶ 10.

¶21    Two main periods account for more than half the total delay in this case. The first was the 406-day period between the District Court ordering Allery to MSH for evaluation and the court suspending criminal proceedings once it determined Allery unfit. The second was the 226-day period between the District Court ordering Allery to jail after he had gained fitness and the court sending Allery back to MSH after Allery's mental decompensation in the jail.

¶22 Both parties agree that most of the 406-day period between the order for Allery's evaluation and the suspension of criminal proceedings against him was institutional delay that weighs against the State. We have held that a defendant who requests evaluation is responsible for the time spent actively completing and reviewing the evaluation. *See, e.g.*, *State v. LaGree*, 2007 MT 65, ¶ 20, 336 Mont. 375, 154 P.3d 615 (attributing to the defendant the 88 days between his attorney's request for a mental examination and the same attorney's withdrawal of a mental disease and defect claim after receiving the examiner's report); *State v. MacGregor*, 2013 MT 297, ¶ 35, 372 Mont. 142, 311 P.3d 428 (attributing a 90-day mental health evaluation to the defendant who had requested it). But we conclude that the State is responsible for delay in commencing the evaluation or delivering its results. MSH has a statutory 60-day window to complete an evaluation. Section 46-14-202(2), MCA. When delay beyond this window is caused by a systemic backlog, the delay is institutional and should be attributed to the State. *See State v. Couture*, 2010 MT 201, ¶ 81, 357 Mont. 398, 240 P.3d 987 (including in a definition of institutional delay a backlog at the State Crime Lab). We agree, and Allery does not dispute, that the District Court should have attributed approximately 60 days (the time Allery actively was being evaluated) of the 406-day period to Allery because his counsel requested the evaluation. The remainder of this period, however—which includes the eight months Allery waited for an MSH bed due to a bedspace shortage and the extra two months needed to evaluate him due to MSH staffing shortages—is institutional delay that weighs against the State.

¶23    The State and Allery dispute the reason for the 226-day period between the judge ordering Allery back to jail and the judge finding Allery again had lost fitness. Allery argues that the State ignored MSH's warnings about Allery's tenuous treatment gains, rushed him back into a jail cell to free up an MSH bed, and then prioritized another trial as Allery's mental state deteriorated in jail—thus producing further delay. The State responds that Allery's claim about the cause of his deterioration is speculative, that the State should not be faulted for transporting Allery to jail after he was found to be fit, and that the conflicting trial the State prioritized was older and the defendant in that case had been incarcerated longer than Allery.

¶24    We agree with the State that it should not be faulted with negligence or bad faith for the delay that ensued after Allery's return to jail and subsequent decompensation. We agree with the District Court, however, that this period weighs as institutional delay against the State. Despite a clinical recommendation that Allery remain at MSH pending trial, the District Court ordered him back to jail to free up MSH bedspace. Allery's mental health decompensated, as MSH evaluators predicted it would, during his time back in jail—a wait that was doubled from three months to six months due to the prosecutor's overbooked court calendar and decision to try another case first. The record contains "substantial credible evidence"—in MSH evaluations, hearing transcripts, and the presentence investigation report—that Allery's second round of unfitness and the ensuing delay could have been avoided had Allery been able to remain at MSH pending trial. *Ariegwe*, ¶ 119. This evidence supports the District Court's finding that Allery's psychological disorders "benefited from institutional care but were not aided by incarceration." We conclude that

the court's finding was not clearly erroneous and agree with the court's corresponding attribution of the 226 days to the State as institutional delay.[1]

¶25 Various other periods make up the remainder of the delay. Twice Allery received treatment at MSH after he was deemed unfit to stand trial, per § 46-14-221(2), MCA. These two periods lasted 175 days and 83 days, for a total of 258 days of active treatment. The District Court attributed this treatment time to neither party, and the parties on appeal largely agree with that decision.[2] *Ariegwe* requires courts to attribute each day of pretrial delay to either the accused or the State. *Ariegwe*, ¶ 64 (emphasizing the State's responsibility to protect society's interest in swift prosecutions). *Ariegwe* does not address, however, the attribution of time when criminal proceedings against an unfit defendant are suspended and the defendant is committed to the custody of the Department of Public Health and Human Services for treatment to regain fitness. Section 46-14-221(2), MCA. As noted earlier, the State's responsibility for institutional delay derives from its obligation to bring an accused to trial. *Chambers*, ¶ 10. But the State does not bear responsibility to bring an accused to trial when criminal proceedings have been suspended and an accused

---

[1] When Allery returned to MSH, he continued to voice his displeasure with the side effects from the antipsychotic medication he had been prescribed and had stopped taking. He agreed to take a different antipsychotic medication. MSH reported that Allery regularly took the new medication after his return and that his psychotic symptoms diminished as a result. There is no indication in the record that Allery had anyone ensuring administration of medication or reviewing his prescription type or dosage while he was in the Cascade County Detention Center.

[2] Allery agrees that the first treatment period should not be attributed to either party. But he argues that the second treatment period should be attributed to the State due to the State's negligence in letting Allery languish in jail, prioritizing another trial over his, and thus causing Allery's second round of unfitness and the need for the second period of treatment. As stated above, we have concluded that the six months leading up to Allery's second determination of unfitness was institutional delay, not delay due to bad faith or negligence on the part of the State.

is receiving treatment. That treatment time is neither caused by the State nor by systemic institutional circumstances. Indeed, an accused may never be prosecuted if they do not regain fitness within a reasonable time. Section 46-14-221(3), MCA (requiring dismissal of criminal proceedings if it appears unlikely that an unfit defendant will become fit "within the reasonably foreseeable future."). As observed by another district court examining the same issue, attributing treatment time to the accused also would be "inappropriate, if not offensive." *Meckler v. State*, No. DV-08-637, 2010 Mont Dist. LEXIS 403, *37 (Mont. Twenty-First Judicial Dist., Aug. 17, 2010). The periods when Allery was receiving active treatment to regain fitness thus are attributable to neither party.[3]

¶26 We do, however, count the 258 days of active treatment in the total delay when determining prejudice under Factor Four. *See Mosby*, ¶ 30 (holding that so much time can pass since commitment that it is unjust for a court to resume criminal proceedings); § 46-14-221(3)(a), MCA.

¶27 Other various brief delays in the final months of the case total 194 days. These delays were caused by the State prosecutor being on military leave, evidentiary needs and disputes, and a COVID lockdown. These delays were institutional, and we weigh them against the State.

---

[3] The *Meckler* Opinion also includes a thorough review of other jurisdictions that have come to a similar conclusion. *Meckler*, *39-41 (citing, e.g., *Commonwealth v. Mansberry*, 356 Pa. Super. 413, 420, 514 A.2d 926, 930 (Pa. Super. Ct. 1986) (excluding 280 days of defendant's treatment from a speedy trial calculation); *People v. Lebron*, 88 N.Y.2d 891, 894-95, 667 N.E.2d 925, 927-28 (N.Y. 1996) (not charging a defendant's committed treatment time to the People because the District Attorney has no duty to prosecute until the defendant is declared competent)). Several states have statutes excluding an accused's civil commitment time from speedy trial calculations; these statutes have been examined and found to comport with an accused's constitutional right to speedy trial. *Meckler*, *41 n.7.

¶28 Of the 1,179 days between Allery's arrest and trial, over 800 are attributable to the State as institutional delay. Although institutional delay weighs less heavily against the State than deliberate or negligent delay, the Constitution cannot tolerate an infinite amount of it. As the State is obligated to bring an accused to trial, we conclude that this factor weighs in Allery's favor.

**Factor Three: Accused's Responses to Delay**

¶29 We evaluate the accused's responses to the delay to determine whether he "actually wanted a speedy trial, which in turn informs the inquiry into whether there has been a deprivation of the right." *Ariegwe*, ¶ 110. The District Court's order dismissing Allery's speedy trial motion made no mention of Allery's explicit complaints about the delay he experienced. Allery wrote numerous pro se letters invoking his speedy trial right and voiced his displeasure with the delay to MSH evaluators. Those letters and reports are in the District Court record. Allery also asserted his right by moving to dismiss. *See State v. Velasquez*, 2016 MT 216, ¶¶ 21-26, 384 Mont. 447, 377 P.3d 125 (deeming the defendant's motion to dismiss on speedy trial grounds sufficient to demonstrate the defendant's desire to be brought to trial). The District Court erred when it failed to assign weight to this factor. *See Velasquez*, ¶ 26. Given Allery's vigilance about the length of time it was taking to get to trial, we conclude that this factor weighs in Allery's favor.

**Factor Four: Prejudice to the Accused**

¶30 For the final factor, we assess whether Allery was prejudiced by the delay. *Ariegwe*, ¶ 111. In denying Allery's speedy trial motion, the District Court found it of "prime significance" that Allery had not experienced prejudice. Allery argues, however, that the

length of his detention demonstrates prejudice. He points out that he spent more time in jail than at MSH, despite the fact that he was destined for an MSH commitment if found guilty.

¶31 An intensifying presumption of prejudice accompanies a lengthy delay. *Ariegwe*, ¶¶ 49-50. We have held that 2,066 days of pretrial incarceration was so long that it established prejudice on its own; the State had a correspondingly heavy burden to demonstrate a lack of prejudice. *Chambers*, ¶ 16. Allery's pretrial incarceration was unquestionably lengthy and merits a presumption of prejudice. The District Court reasoned without citation that Allery's time at MSH mitigated the prejudice Allery experienced. The State stresses this same reasoning on appeal and also cites no supportive case law for this point. It is not this Court's job to develop legal analysis that may lend support to parties' positions. *State v. Gomez*, 2007 MT 111, ¶ 33, 337 Mont. 219, 158 P.3d 442. By all accounts, it appears that Allery's time at MSH was ameliorative and that the MSH staff completed exhaustive evaluations and provided thorough treatment. Nevertheless, Allery had to return for a second round of evaluation and treatment after decompensating in the jail when another six-month delay occurred in bringing him to trial. Considering all the circumstances of the pretrial delay and its effects, we conclude that the State has not overcome the strong presumption of prejudice in this case. The fourth factor thus establishes prejudice to Allery and weighs in Allery's favor.

**Balancing the Factors**

¶32 When we balance the *Ariegwe* factors, we consider them together and "with such other circumstances as may be relevant." *Ariegwe*, ¶ 112. In balancing the factors here, a

strong consideration is the passage of time in Allery's case as a whole. Allery experienced more than two years and two months of institutional delay. He remained detained for more than three years, spending much of this time in jail pending evaluation or decompensating when he was prematurely returned there to free up MSH bedspace. Allery did not cause the delays and he made clear his desire to be brought to trial. Allery's long wait and deterioration in a facility not "suitable" or "appropriate" for mental health evaluation or treatment (§§ 46-14-202(2), -221(2), MCA)—due to systemic institutional problems— failed the government's constitutional obligation. We conclude, on balance, that Allery did not receive his guaranteed right to a speedy trial.

¶33    The only remedy for a speedy trial violation is reversal of the conviction. *State v. Betterman*, 2015 MT 39, ¶ 24, 378 Mont. 182, 342 P.3d 971. We accordingly reverse Allery's conviction for assault with a weapon. Given the reversal, we decline to reach the second issue Allery raises concerning admission of evidence during his trial.

## CONCLUSION

¶34    We reverse the District Court's denial of Allery's speedy trial motion and vacate Allery's conviction with instructions to dismiss.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON

Justice Jim Rice, dissenting.

¶35    The speedy trial issue arises because of a statewide procedural problem the Court has recognized and has prohibited district courts from taking into their own hands:  the extensive delays in case processing caused by conditions at the Montana State Hospital. *See Fouts v. Mont. Eighth Judicial District*, 2022 MT 9, 407 Mont. 166, 502 P.3d 689.  The Court acknowledges that the primary cause of the delay in this case is attributable to those related concerns—Allery's request for a mental evaluation, the delay in securing placement for the evaluation, and the time in conducting the evaluation.  In whatever way this time would be spliced between Allery and the State, and whether considered institutional or not, the State could do nothing about it, with any amount of diligence.  The Court acknowledges the State was not negligent herein.  Allery faults the State for missing an opportunity after he initially regained competency to take him to trial.  While Allery downplays his own contributions to his decompensation by refusing medical advice on his medication, this opportunity was indeed missed, and resulted in a further delay to re-admit Allery at the State Hospital.  However, it was missed because the State tried a case that had been waiting even longer than Allery's, thus illustrating the cascading case problems caused by the State Hospital's delays.  Further, during the time of COVID pandemic case management, defense counsel caused delays by failing to act on its expressed intention to depose the stabbing victim in the case, and then requested an evidentiary hearing on the issue after the District Court had granted the deposition request, which already had necessitated continuing the trial into the time the prosecutor was gone for National Guard duty.  The defense did not object to any of the trial continuances granted in the case.  On the circumstances of a very

difficult case to manage, I would affirm the District Court's denial of Allery's speedy trial motion.

¶36     On the second issue, Allery challenges the District Court's exclusion of character evidence about victim Bower, whom Allery stabbed 27 times.  While I agree that the specific instances of Bower's past violent conduct were inadmissible for lacking the proper foundation, I agree with Allery's argument that Bower's description of himself as a violent person was admissible under M. R. E. 405(a), and was furthered by the State asking a witness what kind of person Bower was, and obtaining the answer he was "a really good guy."  However, I would conclude that in the context of the evidence introduced at trial, this error was inconsequential.

¶37     I would affirm.


                                        /S/ JIM RICE