No. 02-373

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 196

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

TERRENCE JOHN YECOVENKO,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
In and For the County of Valley, Cause No. DC 2000-8,
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Peter L. Helland, Gallagher & Archambeault, PC, Glasgow, Montana

       For Respondent:

       Honorable Mike McGrath, Attorney General; Ilka Becker, Assistant
Attorney General; Helena, Montana

       Kenneth L. Oster, County Attorney, Glasgow, Montana

Submitted on Briefs:  June 12, 2003

Decided:  July 27, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Terrence Yecovenko (Yecovenko) appeals from a jury verdict and judgment entered in the Seventeenth Judicial District Court, Valley County, finding him guilty of two counts of sexual assault and two counts of sexual abuse of children. We affirm.

¶2     The issues raised on appeal are as follows:

¶3     1. Did the District Court err in denying defendant's motion to sever the sexual assault charges from the sexual abuse of children charges?

¶4     2. Did the District Court err in granting the State's motion to amend the information?

BACKGROUND

¶5     Yecovenko and his then-girlfriend, D.S., began living together in August 1999 in Idaho. D.S. has two daughters, W.S. and V.S., who lived with her and Yecovenko. In December 1999 the four of them moved to Glasgow, Montana, initially living with Yecovenko's parents. In mid-January 2000 they moved into a separate residence in Glasgow. All four lived at this new residence until June 8, 2000, when Yecovenko moved back to his parents' home. At the time that they moved to Glasgow, W.S. was ten years old and V.S. was eleven years old.

¶6     Yecovenko worked one day a week at the stockyards, earning roughly fifteen to twenty-five dollars a day. This was his only income at the time. D.S. received Social Security benefits and veteran's benefits approximating $2300 per month. Being short of funds, D.S. arranged to have a friend purchase a computer for her with the understanding that

she would pay him back, which she did. D.S. secured internet access for her new computer as well.

¶7 Both D.S. and Yecovenko used the computer, keeping their files in separate folders labeled with their first names. Beginning around February 2000, Yecovenko began downloading pornographic images of all kinds, including those involving children. He stored these files on the hard drive in his folder. When D.S. discovered the images on the computer, she instructed Yecovenko to remove them. He then began storing most of the pornography on zip disks, though some files remained on the computer's hard drive. Yecovenko continued downloading pornographic images until he moved out of the house in June 2000, by which time he was spending extended hours online every day.

¶8 During this time, Yecovenko also spent time with his friend, Harold Lindell. Lindell and Yecovenko discussed accessing internet pornography via Lindell's computer. Lindell maintained that his illiteracy prevented him from downloading the images himself. Yecovenko downloaded adult pornography with Lindell's permission, but Lindell forbade any child pornography. Despite this, Yecovenko downloaded child pornography both to Lindell's hard drive and to disks.

¶9 On June 8 or 9, 2000, W.S. told her mother that Yecovenko had made inappropriate comments to her. W.S. testified that about a week prior to moving out, Yecovenko had asked to see her "private parts" and had touched her inappropriately over her clothes. On June 30, 2000, V.S. told D.S. that Yecovenko had touched her. V.S. testified that Yecovenko had bribed her with money or privileges to permit him to touch her inappropriately directly on

3

her skin, which he did on several occasions.  D.S. subsequently took her daughters to make a report to the police.

¶10     The investigation that followed uncovered ninety to one hundred images of child pornography on zip disks seized from Yecovenko's closet at his parents' residence. Duplicates of fifty-eight of these images were also found on Lindell's computer along with another six pornographic images of children.

¶11     The District Court granted leave for the State to file an information on November 6, 2000.  The defendant was charged with two counts of sexual assault for his conduct with W.S. and V.S. and two counts of sexual abuse of children, these latter charges relating to the images of child pornography.

¶12     Prior to trial the defendant moved to sever the sexual assault charges from the sexual abuse of children charges.  In support of his motion, the defendant stated (1) that the only similarities between the two sets of charges were the place and some overlap in time, (2) that the elements of the two sets of offenses were "totally different," and (3) that he would be "extremely prejudiced" with respect to one set of offenses by the evidence offered to prove the other set.  The defendant's attorney submitted an affidavit in support of the motion to sever which stated that the evidence "is of such a nature that it would incur and create great prejudice towards the defendant."

¶13     During trial, the jury viewed ten of the images that were common to each collection of illicit pornography.  These images were offered as proof of the sexual abuse of children charges only.

4

¶14    On October 10, 2001, nineteen days prior to trial, the State moved to amend the information to expand the date range for each of the four counts.  For the sexual assault counts, the State sought to change the date ranges from "May and/or June 2000," to "March 2000 through June 2000."  For the sexual abuse of children counts, the State sought to change the date ranges from "June and/or July 2000," to "March 2000 through July 2000."

¶15    On October 24, 2001, five days prior to trial, the District Court partially granted the State's motion.  One count of sexual assault was left unchanged, but the other three counts were amended as requested.

¶16    The jury convicted Yecovenko on all four counts.  He now appeals.

## STANDARD OF REVIEW

¶17    We review denial of a motion to sever counts into separate trials for abuse of discretion.  *State v. Freshment*, 2002 MT 61, ¶ 25, 309 Mont. 154, ¶ 25, 43 P.3d 968, ¶ 25.  We review a district court's decision to permit an amendment to a criminal complaint or information for abuse of discretion.  *Red Lodge v. Kennedy*, 2002 MT 89, ¶ 10, 309 Mont. 330, ¶ 10, 46 P.3d 602, ¶ 10.

## DISCUSSION

***¶18    Did the District Court err in denying defendant's motion to sever the sexual assault charges from the sexual abuse of children charges?***

¶19     A criminal defendant seeking to sever counts into separate trials has the burden of proving that severing the counts is necessary to prevent unfair prejudice.  *Freshment*, ¶ 26.  Proving that some prejudice will result from a joint trial or that separate trials would provide a better chance of acquittal is not sufficient.  "Rather, a defendant has the burden to

5

demonstrate prejudice that will prevent a fair trial." *Freshment*, ¶ 26. Where the charges are few and the evidence is simple and distinct, a jury is less likely to be confused and prejudice is more difficult to demonstrate. *Freshment*, ¶ 26.

> In considering whether prejudice will prevent a fair trial, there are three types of prejudice a defendant may prove that must be considered by a trial court. First, the accumulation of evidence may be such that a jury would find the defendant a bad person and wish to convict the defendant of something. Second, a jury might use evidence of guilt on one count to convict on another count, even though that evidence would be inadmissable at a separate trial on the latter count. Third, the defendant may suffer prejudice by wanting to testify on one count and not another. Abuse of discretion by a district court only occurs where the court fails to properly weigh these three types of prejudice against the judicial economy resulting from a joint trial.

*Freshment*, ¶ 27 (citations omitted).

¶20 Yecovenko argues on appeal that the District Court's denial of his motion to sever was error because he was subject to the first two types of prejudice. Specifically, he contends that the evidence accumulated such that the jury considered him a bad man and that evidence of the counts dealing with child pornography would have been inadmissible in a separate trial on the sexual assault counts.

¶21 However, Yecovenko raises arguments on appeal which he failed to raise in the District Court. At trial, Yecovenko failed to assert the type of prejudice he would incur if the charges were not severed. Instead, his motion to sever and his attorney's supporting affidavit simply asserted that prejudice would result. The District Court noted this in its order denying the motion:

> Defendant has not made any allegations that by trying these charges together to a jury he would be considered as a bad man on the basis of the accumulative

evidence. He's further not made any charges or allegations that the jury would use proof of guilt on one count to convict him of a second or other count, even though that proof would be inadmissible on the second or other count.

A plain assertion that the defendant would be "extremely prejudiced" or that the evidence is such that it would create "great prejudice towards the defendant" is distinguishable from a claim which identifies a specific prejudice which our law has recognized. Such bald assertions fail to fulfill the requirement for pretrial motions that a "motion must state with particularity the grounds for the motion and the order or relief sought." Section 46-13-101(4), MCA.

¶22 To be clear, the defendant must first allege specific prejudice and then demonstrate how that prejudice will prevent a fair trial. In the District Court, Yecovenko failed to allege the nature or type of prejudice which would occur absent a severance of the counts, and thus, failed to satisfy this threshold requirement. Although he attempts to demonstrate prejudice on appeal, this Court will not consider new issues or changes in legal theory on appeal. *State v. Peterson*, 2002 MT 65, ¶ 24, 309 Mont. 199, ¶ 24, 44 P.3d 499, ¶ 24; *Unified Industries, Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15; *see also Akhtar v. Van de Wetering* (1982), 197 Mont. 205, 209, 642 P.2d 149, 152. "We will not put a trial court in error on an issue raised by a party on appeal where it was not given the opportunity to address the issue." *State v. Root*, 1999 MT 203, ¶ 17, 296 Mont. 1, ¶ 17, 987 P.2d 1140, ¶ 17. Therefore, we affirm the District Court's denial of the motion to sever and do not reach the merits of Yecovenko's prejudice argument on appeal.

¶23 ***Did the District Court err in granting the State's motion to amend the information?***

¶24    Section 46-11-205, MCA, provides for an amendment to a criminal information as follows:

> **Amending information as to substance or form.** (1) The court may allow an information to be amended in matters of substance at any time, but not less than 5 days before trial, provided that a motion is filed in a timely manner, states the nature of the proposed amendment, and is accompanied by an affidavit stating facts that show the existence of probable cause to support the charge as amended. A copy of the proposed amended information must be included with the motion to amend the information.
>
> (2) If the court grants leave to amend the information, the defendant must be arraigned on the amended information without unreasonable delay and must be given a reasonable period of time to prepare for trial on the amended information.
>
> (3) The court may permit an information to be amended as to form at any time before a verdict or finding is issued if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced.

¶25    "An amendment is one of form when the same crime is charged, the elements of the crime and the proof required remain the same and the defendant is informed of the charges against him." *Red Lodge*, ¶ 11.

¶26    Yecovenko argues that the District Court erred when it permitted the State to amend the information eleven months after the court first granted leave to file an information because the amendment was untimely.  In doing so, Yecovenko is implicitly suggesting that the changes to the information were of substance rather than of form.

¶27    We disagree.  The amendment to the information merely changed the date ranges of three of the four counts, and then only by a few months.  The same crimes were charged, the elements and proof required did not change, and the defendant was informed of the charges against him.  Moreover, the defendant was not prejudiced in any way by the change.

8

Therefore, the amendment was one of form, not substance, and the District Court did not abuse its discretion in allowing it.

## CONCLUSION

¶28    Yecovenko failed to preserve for appeal the issue of prejudice resulting from a joint trial of the sexual assault charges and the sexual abuse of children charges.  The District Court did not abuse its discretion by permitting an amendment of form to the information.

¶29    Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER

9