# FILED

December 14 2007

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 06-0398

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2007 MT 338

TERRENCE JOHN YECOVENKO,

       Petitioner and Appellant,

  v.

STATE OF MONTANA,

       Respondent and Appellee.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
In and For the County of Valley, Cause No. DV 2005-066
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Robert M. Peterson, Peterson Law Office, Havre, Montana

       For Appellee:

       Hon. Mike McGrath, Montana Attorney General, Ilka Becker,
Assistant Attorney General, Helena, Montana

       Kenneth L. Oster, Valley County Attorney, Glasgow, Montana

Submitted on Briefs:  March 7, 2007

Decided:  December 14, 2007

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Terrence Yecovenko (Yecovenko) appeals from the Seventeenth Judicial District Court's order denying his Petition for Postconviction Relief. We reverse and remand.

## ISSUE

¶2 The sole issue on appeal is whether the District Court erred in denying Yecovenko's Petition for Postconviction Relief.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In November 2000 Yecovenko was charged with two counts of sexual assault. These charges stemmed from allegations of sexual contact with the ten-year old and twelve-year old daughters of his former live-in girlfriend. He was also charged with two counts of sexual abuse of children. These charges were unrelated to the assault charges and arose from the discovery by law enforcement of collected images of child pornography on Yecovenko's computer and on zip disks in his possession. Prior to trial, Yecovenko moved to sever the sexual assault charges from the sexual abuse/pornography charges. He argued that the elements of the assault and abuse charges were different, and that he would suffer prejudice by the introduction of the State's evidence from one case to the other. In other words, he would be prejudiced vis-à-vis the sexual assault charges by introduction of the pornography in the State's case against him for sexual abuse. Alternatively, if the State introduced its evidence of sexual assault first, he would be prejudiced vis-à-vis the sexual abuse charges. The District Court denied his motion finding that Yecovenko had not alleged the manner in which he would be prejudiced by joinder of the charges into one trial.

2

¶4 After listening to the testimony of the two children and after viewing the State's evidence of sexual abuse consisting of ten printed child pornographic images from the collection on Yecovenko's computer and disk, the jury convicted him on all counts of sexual abuse and sexual assault. With new counsel, he appealed the convictions in part on the ground that the District Court erred in denying his motion to sever the charges. However, Yecovenko's appellate counsel did not argue on appeal that trial counsel had been ineffective for failing to adequately assert the "prejudice" element of his motion to sever; rather, his argument centered upon the type and manner of prejudice to which Yecovenko had been exposed in a single trial setting. In July 2004 we affirmed the convictions on procedural grounds and did not address the merits of the "motion to sever" issue. Our decision is reported at *State v. Yecovenko*, 2004 MT 196, 322 Mont. 247, 95 P.3d 145.

¶5 In October 2005 Yecovenko, with new counsel yet again, filed a Petition for Postconviction Relief and supporting memorandum arguing ineffective assistance of both trial counsel and appellate counsel. He sought reversal of his convictions and requested separate trials on the assault and abuse charges. In March 2006 the District Court denied the Petition finding that Yecovenko's trial counsel was ineffective but that Yecovenko had failed to demonstrate that trial counsel's deficient performance prejudiced his defense in a manner that denied him a fair trial. The court, having resolved Yecovenko's petition on the issue of trial counsel's ineffectiveness, declined to address Yecovenko's allegations of ineffective assistance by appellate counsel.

¶6 Yecovenko filed a timely appeal.

¶7    Additional facts will be discussed as needed for our analysis.

## STANDARD OF REVIEW

¶8    We review a district court's denial of a petition for postconviction relief to determine whether the court's findings of fact are clearly erroneous, and whether its conclusions of law are correct. *Camarillo v. State*, 2005 MT 29, 326 Mont. 35, 107 P.3d 1265.

## DISCUSSION

¶9    As referenced above, three different attorneys have represented Yecovenko relative to these charges: trial counsel, appellate counsel and postconviction counsel. Trial counsel represented Yecovenko before the District Court in the underlying jury trial. Appellate counsel represented Yecovenko before this Court in the appeal of his convictions. Postconviction counsel represented Yecovenko in the District Court in his request for postconviction relief and currently represents Yecovenko in this appeal of the District Court's order denying postconviction relief.

¶10   To determine whether the District Court erred in denying Yecovenko's Petition for Postconviction Relief we must examine Yecovenko's claims of ineffective assistance of trial counsel and appellate counsel.

¶11   Trial counsel filed a motion to sever in the District Court seeking separate trials for Yecovenko—one trial on the sexual assault charges and a second trial on the sexual abuse charges. While counsel posited that Yecovenko would be "extremely prejudiced" by the presentation of the State's evidence, counsel simply set forth in his motion the different elements required to establish the different crimes. In his accompanying

4

affidavit, however, trial counsel, without providing specific detail, argued that the physical evidence the State intended to present to prove the sexual abuse charges was "base" and "disgusting" and of "such a nature that it would be viewed . . . pornographic" and "create great prejudice towards [his client]" and "have a damaging effect on the jurors."

¶12 Relying on *State v. Hocevar*, 2000 MT 157, 300 Mont. 167, 7 P.3d 329, the State responded by arguing that Yecovenko had not alleged any specific type of prejudice that would result from joinder of all charges in a single trial. In *Hocevar*, we discussed three types of prejudice which may result from consolidating charges. First, a jury may consider the criminal defendant facing multiple charges a "bad man" and accumulate evidence until it finds the defendant guilty of something. Second, a jury may use proof of guilt on one count to convict the defendant of a second count even though that proof would be inadmissible at a separate trial on the second count. Third, the defendant may be prejudiced if he or she wishes to testify on one charge but not on another. *Hocevar*, ¶ 68 (citation omitted). Notably, even though the State pointed out, with specificity, the deficits in trial counsel's assertions of prejudice, trial counsel did not file a reply to the State's response.

¶13 The District Court ruled that Yecovenko had failed to show that he would be unfairly prejudiced by joining the offenses into a single trial. The court addressed each of the three scenarios presented in *Hocevar* and held that Yecovenko failed to allege any one of them. As a result, the court determined that a single trial on all charges served the interest of judicial economy. Trial counsel did not request reconsideration of this ruling

5

or attempt to supplement his prior inadequate motion for severance. The joint trial proceeded and Yecovenko was found guilty of all charges.

¶14 Upon conviction on all counts, Yecovenko obtained new counsel and appealed his conviction to this Court. Appellate counsel argued that the District Court had erred in denying Yecovenko's motion to sever because Yecovenko was subject to two types of prejudice—specifically, that the accumulated evidence caused the jury to consider him a "bad man" and that evidence of the counts dealing with child pornography would have been inadmissible in a separate trial on the sexual assault counts. *Yecovenko*, ¶ 20. While appellate counsel correctly identified the types of prejudice to which Yecovenko had been exposed, he failed to assert that trial counsel was ineffective for failing to raise the same. As a result, this Court was asked to address arguments concerning prejudice that were never presented to the District Court, but without any justification being offered by appellate counsel for why we should do so. In affirming the District Court we explained, "Although he attempts to demonstrate prejudice on appeal, this Court will not consider . . . changes in legal theory on appeal. We will not put a trial court in error on an issue raised by a party on appeal where it was not given the opportunity to address the issue." *Yecovenko*, ¶ 22 (internal citations omitted). In our analysis, however, we observed that trial counsel's "bald assertions" of prejudice failed "to fulfill the requirement for pretrial motions." *Yecovenko*, ¶ 21.

¶15 After obtaining new counsel Yecovenko sought postconviction relief from the District Court alleging ineffective assistance of both trial and appellate counsel. In his Petition, he detailed the deficiencies of counsel discussed above. In his Memorandum in

Support of Postconviction Relief, he argued that the type of evidence presented at his trial demanded an assessment of prejudice based on the "bad man" theory and an analysis of the potential that he would be found guilty on one charge based on inadmissible evidence from the other charge. He also argued that, because of the prejudice he experienced at trial as a result of trial counsel's ineffectiveness, "confidence in the outcome of this proceeding . . . must be found to be seriously undermined."

¶16   The District Court reviewed Yecovenko's postconviction petition and determined that Yecovenko had established that trial counsel's "performance fell below the range of competence required of attorneys in criminal cases," thus meeting the first prong of the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). The District Court concluded, however, that Yecovenko had failed to satisfy the second prong of the *Strickland* test, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. As a result, the District Court denied Yecovenko's postconviction petition concluding that the court's jury instructions adequately addressed and dealt with potential prejudice to Yecovenko.

¶17   On appeal, Yecovenko argues that the District Court erroneously denied his Petition for Postconviction Relief. He requests that his Petition be granted, his prior convictions reversed, and that we order the District Court to grant separate trials on the assault charges and the abuse charges.

¶18   Article II, Section 24, of the Montana Constitution and the Sixth Amendment of the United States Constitution guarantee a person the right to the effective assistance of

counsel. As referenced above, the U. S. Supreme Court established a two-prong test in *Strickland* to evaluate claims of ineffective assistance of counsel. This Court subsequently adopted that test. *State v. Boyer*, 215 Mont. 143, 695 P.2d 829 (1985).

¶19 Applying the *Strickland* test to trial counsel's performance, we conclude, as we observed in *Yecovenko*, ¶ 22, that trial counsel ineffectively represented Yecovenko by proffering a motion to sever to the District Court that did not satisfy the threshold requirements for a pretrial motion. Section 46-13-101(4), MCA, specifically requires that all pretrial motions must "state with particularity the grounds for the motion and the order or relief sought." Section 46-13-211, MCA, authorizes a court to order separate trials "if it appears that a defendant . . . is prejudiced by a joinder of charges . . . ." It is the defendant's burden to prove that severing the charges pursuant to § 46-13-211(1), MCA, is necessary to prevent unfair prejudice and that such prejudice is so great as to prevent a fair trial. *State v. Harlson*, 2006 MT 312, ¶ 37, 335 Mont. 25, ¶ 37, 150 P.3d 349, ¶ 37 (internal citations omitted). Yecovenko's trial counsel failed to carry this burden in his motion, and when given a chance after the State pointed out the deficiencies of his motion to file a reply brief supplying the necessary arguments, he did not do so. Trial counsel's failure to allege the nature or type of prejudice which would occur absent a severance did not constitute sound trial strategy or fall within a wide range of reasonable professional conduct—it constituted ineffective assistance.

¶20 Similarly, appellate counsel's failure to raise ineffective assistance of trial counsel before this Court on appeal cannot be viewed as legitimate appellate strategy under these circumstances. Presenting new arguments on appeal without justification for doing so, in

8

light of the volume of cases holding that such arguments will not be entertained, falls short of reasonable professional assistance.

¶21    Having determined that both trial counsel and appellate counsel ineffectively assisted Yecovenko, we turn to the District Court's denial of his postconviction petition. Yecovenko effectively argued that trial counsel and appellate counsel were ineffective in their representation of him during the earlier proceedings.  The District Court agreed and concluded that Yecovenko satisfied the first prong of *Strickland* and that trial counsel inadequately fulfilled the requirements for pretrial motions.

¶22    However, the District Court subsequently determined that Yecovenko had not satisfied the second prong of *Strickland* requiring demonstration of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  We disagree.  The pornographic images shown to the jury as proof of the sexual abuse charges were, quite simply, horrific.  In fact, they were so offensive that the court felt compelled to both clear the courtroom before they could be published by overhead projection to the jury, and limit the jury's view of each image to five seconds.  These pictures had absolutely no probative value with respect to the sexual assault case, and would have been flatly inadmissible in that case had the matter been tried separately.  But, they came into evidence in the combined trial. The jury was virtually certain to be disgusted with Yecovenko after viewing these images, which, while acceptable in the context of the sexual abuse trial, is unacceptable in connection with their obligation to dispassionately evaluate the evidence supporting the separate charges of sexual assault on minor children.  As Yecovenko argued in his motion, his

9

ability to challenge the credibility of the children's accounts in the sexual assault case was completely undermined by the introduction of the pornographic images to the jury.

¶23 The second prong of *Strickland* requires the Court to assess whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. We conclude that Yecovenko has satisfied this prong, having shown that the prejudice to him "seriously undermined" the verdict. Our review of the record leads us to conclude that the failure to sever resulted in a level of prejudice, the absence of which could have reasonably resulted in a different outcome. Therefore we hold that the District Court erred in denying Yecovenko's Petition for Postconviction Relief.

¶24 We are thus left with the question of what relief to afford. While Yecovenko's counsel urges us in the conclusion of his brief to grant him new and separate trials on both the sexual assault and sexual abuse charges, his actual argument focuses solely and repeatedly on the prejudicial impact that the pornographic images had on his ability to receive a fair trial on the sexual assault charges. Given how odious these images are, the presumptive prejudice clearly does run in this direction. Moreover, Yecovenko was able to fully present to the jury his defenses to the sexual abuse charges. For these reasons, we decline to order a new trial on the sexual abuse charges. However, we reverse Yecovenko's conviction of sexual assault, and remand this matter to the District Court for a new trial. In addition, because the District Court imposed concurrent sentences of forty years with twenty suspended for the crimes of sexual assault and sexual abuse, and we

are now reversing the sexual assault conviction, we deem it appropriate to remand the sexual abuse conviction for resentencing.

¶25 Reversed and remanded for further proceedings consistent with this Opinion.

/S/ PATRICIA COTTER

We concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS

Justice Jim Rice dissenting.

¶26 The Court concludes that the District Court erred by denying Yecovenko's claim for ineffective assistance of counsel and grants a new trial on the sexual assault charges, Opinion, ¶¶ 23-24, concluding that Yecovenko was entitled to separate trials for the charges because the evidence filed against him in support of the sexual abuse charge was "horrific." Opinion, ¶ 22. I do not disagree with the Court's characterization of the evidence, but I do disagree that reversal for a new trial is appropriate.

¶27 In considering whether Yecovenko would have been entitled to separate trials, had his counsel filed a properly supported motion, we should apply the law which governs such motions. First, "[t]he burden is on the defendant to prove that severing the charges pursuant to § 46-13-211(1), MCA, is necessary to prevent unfair prejudice." *State v. Harlson*, 2006 MT 312, ¶ 37, 335 Mont. 25, ¶ 37, 150 P.3d 349, ¶ 37. "This burden cannot be met by proving either that the defendant will face some prejudice from the joint

11

trial or will stand a better chance of acquittal in separate trials; rather, the defendant must prove the prejudice is so great as to prevent a fair trial." *Harlson*, ¶ 37. In *Harlson*, we explained that the statute governing joinder of charges provides:

> Two or more offenses or different statements of the same offense may be charged in the same charging document in a separate count, or alternatively, if the offenses charged, whether felonies or misdemeanors or both, *are of the same or similar character . . . .*

*Harlson*, ¶ 34 (citing § 46-11-404(1), MCA) (emphasis added).

¶28 The Court's opinion suffers from tunnel vision by focusing only on the evidence related to the sexual abuse charge and ignoring the evidence presented in support of the sexual assault charges. I submit that these charges, and the evidence offered in support of the charges, were of "similar character," § 46-11-404(1), MCA, allowing Yecovenko to be tried on both charges without inordinate prejudice. Indeed, the evidence submitted regarding the sexual assault charge was similarly "horrific."

¶29 Yecovenko was charged with two counts of sexual assault arising from the allegations of his sexual contact with the ten-year-old W.E.S. and twelve-year-old V.A.S., daughters of his girlfriend. At trial, the jury was first introduced to the sexual assault charges through the testimony of Glasgow police officer, Bruce Barstad, who interviewed W.E.S. and V.A.S. regarding their molestations. Barstad testified that V.A.S. told him that Yecovenko "had touched her chest and had rubbed her in the vaginal area with his fingers." Barstad stated that V.A.S. informed him that this touching occurred directly on the skin and Yecovenko would often "bribe" her by offering "her something in return for her permission to allow him to [touch] her."

12

¶30 Each girl then took the witness stand and testified about her respective experiences. W.E.S. stated that Yecovenko would ask to see her private parts and that Yecovenko touched and rubbed her "upper" and "lower" private parts both through her clothing and after asking her to undress. V.A.S. recounted that Yecovenko would promise her things if she allowed him to touch her. These promises, which V.A.S. called "bribes," included money and other privileges such as having a friend over or going to a friend's house. V.A.S. explained that "he told [her] to take off [her] clothes" and he would rub his fingers on her skin, over her "breasts and [her] front private [area] down below the belt." Further testimony revealed that Yecovenko repeatedly requested to perform oral sex on V.A.S. and that she felt "disgusted" and "bad" after theses instances.

¶31 Although the Court concludes that upon viewing the pornographic images related to the sexual abuse charge the "jury was virtually certain to be disgusted with Yecovenko," Opinion, ¶ 22, I respectfully submit that the jury would have been similarly disgusted after hearing the very clear testimony offered by the two young girls who were Yecovenko's victims in the sexual assault case. This was not a trial for sexual abuse and burglary or some other dissimilar charge, for which the horrific evidence would unfairly prejudice the defendant with regard to the unrelated charge. This trial was for charges which involved similar subject matter: sexual contact with, and abuse upon, minor children.

¶32 We have recognized that there is "no reason to assume the jury will be confused and cannot keep the relevant evidence separate when the charges are few and the evidence straight forward." *State v. Southern*, 1999 MT 94, ¶ 41, 294 Mont. 225, ¶ 41,

13

980 P.2d 3, ¶ 41. Here, the charges were few, and the evidence about each was piercingly straightforward. Further, the jury was instructed that "[e]ach count charges a distinct offense" and that they "must decide each count separately." Nothing in the record suggests that the jurors did not follow their instructions or did not keep the relevant evidence separate or were so inflamed by the pornographic images that they convicted Yecovenko of sexual assault because of this "horrific" evidence. Indeed, there was plenty of "horrific" evidence—of similar character—also introduced in the sexual assault case. I would conclude that the jurors properly did their duty and followed the instructions. There is no reason to reverse the convictions premised upon the clear and courageous testimony of two young sexual victims simply because the accompanying sexual abuse charge included evidence with similarly horrific content.

¶33 Although defense counsel may have erred by filing an insufficient motion to sever, I would conclude the defendant was not prejudiced because he was not entitled to severance of the charges under the law.

¶34 Unfortunately, the Court's decision today will strike a blow to future child sexual assault prosecutions. When searches are conducted of an accused's residence, it is not uncommon to find child pornography, which gives rise to secondary charges. Today's decision will likely force double trials in such cases and thereby greatly increase the efforts the State must take to obtain convictions in each case.

¶35 I dissent.

/S/ JIM RICE

14